90 Cal.Rptr.2d 916 (1999)
76 Cal.App.4th 1229
Robert RAMIREZ III, Plaintiff and Respondent,
v.
CIRCUIT CITY STORES, INC., Defendant and Appellant.
No. A085701.
Court of Appeal, First District, Division One.
December 10, 1999.
Review Granted March 15, 2000.
*917 Rex Darrell Berry, Davis, Grimm & Payne, Seattle, WA, Robert Pattison, Jackson, Lewis, Schnitzler & Krupman, San Francisco, for Appellant.
David A. Rosenfeld, Joseph A. Creitz, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, for Respondent.
STEIN, J.
Circuit City Stores, Inc. [Circuit City] appeals from the order of the superior court denying its motion to compel arbitration of an action filed against it by Robert Ramirez.[1] We will affirm.

BACKGROUND
Ramirez is, or was, employed by Circuit City in Fresno, California, where he installs or installed equipment in automobiles. At the time he applied for a job with Circuit City, Ramirez was required by Circuit City to sign a document, the "Circuit City Dispute Resolution Agreement" (hereafter, the "arbitration agreement") under which he agreed to settle any and all claims he might have arising out of or relating to his application or candidacy for employment, his employment or the cessation of his employment with Circuit City, by final and binding arbitration before a neutral arbitrator and in accordance with Circuit City's "Dispute Resolution Rules and Procedures." Ramirez was given no choice but to sign the document if he wished to apply for a position with Circuit City. The arbitration agreement further provided that unless Ramirez withdrew his application within three days, he would be bound by the terms of the arbitration agreement.
Circuit City's "Dispute Resolution Rules and Procedures" is a separate document, containing nine single-spaced typed pages of rules. Among other things, the rules require Circuit City's employees, termed "Associates," to arbitrate any and all employment-related disputes they have against Circuit City, including any claims arising from age discrimination, violation of civil rights or violation of the Fair Labor Standards Act. Rule 9 deprives the arbitrator of the power to hear class actions, a provision that, according to Circuit City, means that an individual employee may not seek redress against Circuit City by means of participation in a class action, whether the class action is pursued through the courts or through arbitration.
The rules set forth the procedures for filing and prosecuting claims. They limit *918 discovery. They require claims to be filed within one year after the date the Associate knew or should have known of the facts underlying his or her claim. They place the burden of proof on the Associate, providing that in order to prevail the Associate must prove by a preponderance of the evidence that Circuit City's conduct was a violation of applicable law. The rules describe the relief available to an Associate, providing that an Associate may obtain (1) certain forms of injunctive relief, (2) reinstatement, (3) full or partial back pay and fringe benefits for up to one year from the point that the Associate knew or should have known that a law was being violated, (4) up to 24 months of pay if reinstatement is not practical or reasonable under the circumstances, or (5) compensatory damages in accordance with applicable law. Punitive damages are limited to an amount equal to any monetary award made under (3) or (4), above, or $5,000, whichever amount is greater. The rules provide that the parties will share the costs of arbitration and that the Associate will pay his or her own attorney fees. They further provide, however, that should the Associate prevail, the arbitrator has the discretion to require Circuit City to pay the Associate's costs and award the Associate reasonable attorney fees.
On July 22, 1998, Ramirez, "on behalf of himself and all others similarly situated,"[2] filed suit against Circuit City, claiming that Circuit City had violated provisions of the Labor Code and California Code of Regulations and had committed unfair and unlawful business practices as those terms are defined by Business Code and Professions Code section 17200. More specifically, Ramirez alleged, (1) that Circuit City failed to pay its employees at least twice the minimum wage although it required them to provide many of the tools used in the installation process;[3] (2) that Circuit City required its employees to work overtime but did not pay them overtime at the rate of one and one-half times the minimum wage;[4] and (3) that Circuit City was misreporting the statements of gross and net earnings of its employees.[5] Ramirez sought restitution, statutory damages, injunctive relief and attorney fees.
Circuit City answered Ramirez's complaint, and thereafter filed a petition to compel arbitration, citing the arbitration agreement. The trial court denied Circuit City's motion, finding (1) the lawsuit was brought as a class action and the arbitration agreement specifically excludes class actions from its mandatory arbitration provisions; [6] (2) the arbitration agreement *919 contravenes California law to the extent that it limits the rights conferred on employees by the Labor Code, and (3) the arbitration agreement is unconscionable.
We will affirm, finding that the arbitration agreement is unenforceable as unconscionable. The limitations imposed by the arbitration agreement on class actions and on the rights and remedies available to its employees and prospective employees are relevant to the question of the agreement's unconscionability. We need not and do not here determine if, in and of themselves, they provide alternative bases for upholding the trial court's ruling.

DISCUSSION
The doctrine of unconscionability applies to arbitration agreements in the same manner as it applies to other contracts, and an unconscionable arbitration agreement will not be enforced. (Kinney v. United HealthCare Services, Inc. (1999) 70 Cal.App.4th 1322, 1327-1328, 83 Cal. Rptr.2d 348.)
"Unconscionable agreements typically involve contractual provisions which operate in a harsh and one-sided manner without any justification. [Citation.] They have both a procedural and a substantive element. `The procedural element focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice.... Surprise involves the extent to which the terms of the bargain are hidden in a "prolix printed form" drafted by a party in a superior bargaining position.... Substantive unconscionability inquires into whether the one-sidedness of an agreement is objectively justified.... This component is tied to procedural unconscionability and requires a balancing test, such that "`the greater the unfair surprise or inequality of bargaining power, the less unreasonable the risk reallocation which will be tolerated' "`[Citation.]" (Olsen v. Breeze, Inc. (1996) 48 Cal.App.4th 608, 621, 55 Cal. Rptr.2d 818.)
The contract at issue here was what has been labeled an adhesion contract; i.e., a "`standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (Graham v. Scissor-Tail, Inc. (1981) 28 Cal.3d 807, 817, 171 Cal.Rptr. 604, 623 P.2d 165.) So-called adhesion contracts are not, in and of themselves, unenforceable or even particularly objectionable, but the manner in which their terms are drafted and the language and style in which they appear are subject to an unconscionability analysis. They can satisfy the first, procedural, element of unconscionability, when the party with the weaker bargaining power has no ability to negotiate the terms, no meaningful choice other than to agree to the terms stated by the party in the stronger bargaining position and may have no real ability to comprehend the terms to which he or she is agreeing.
Here, if Ramirez was to be considered for a position with Circuit City he had no choice but to sign the arbitration agreement.[7] Circuit City argues that Ramirez had a choice in that he was free to choose not to apply for a job with Circuit City. This argument, however, ignores the realities of the marketplace. Persons such as Ramirez, applying for an entry level position, presumably need a job and lack much in the way of salable skills. Circuit City was in a position to provide the needed job. In addition, although persons familiar *920 with employment rights and employment law probably could comprehend the nature of the rights they would be giving up by agreeing to the arbitration agreement, it is unrealistic to suppose that persons such as Ramirez, seeking work and applying for positions not requiring specialized education, would have the background to understand the significance of rights they were relinquishing. A meaningful choice requires more than the choice, for applicants such as Ramirez, between forgoing the possibility of employment or applying for a job but agreeing to what, superficially, appears to be a fair means of resolving employment disputes. It follows that the procedural element of unconscionability existed here.
The lack of meaningful choice, however, would not be enough to render the agreement unenforceable if the terms of the agreement were even-handed; however, they are not. It is by now well-settled that an agreement that requires the weaker party to arbitrate any claims he or she may have, but permits the stronger party to seek redress through the courts, is presumptively unconscionable. (Kinney v. United HealthCare Services, Inc., supra, 70 Cal.App.4th at p. 1332, 83 Cal.Rptr.2d 348; Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519, 1536-1542, 60 Cal. Rptr.2d 138.) Circuit City contends its arbitration agreement is not unilateral, but requires both parties to arbitrate their claims. In support of this contention, Circuit City cites language in Rule 2 of the Rules and Procedures: "Arbitration shall apply to any and all such disputes, controversies or claims whether asserted against the Company and/or against any employee, officer, alleged agent, director or affiliate company." (Emphasis added.) Any suggestion that this language includes a promise by Circuit City to arbitrate claims it might have against an employee, however, is negated by the language with which Rule 2 opens, which explains just what "such disputes" are: "Except as otherwise limited herein, any and all employment-related legal disputes, controversies or claims of an Associate . ..." (Emphasis added.) Nothing is said about claims of the Company or about claims against Associates.
Circuit City also cites the only language in the arbitration agreement that expressly sets forth an obligation on Circuit City's part: "Circuit City agrees to follow this Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures in connection with the Associate whose signature appears above." This language, however, hardly can be characterized as an agreement by Circuit City to arbitrate any claims it may have against the employee; it does nothing more than bind Circuit City to follow the Rules and Procedures in connection with any claim filed by an Associate.
Although it is unnecessary to look beyond the unilateral nature of Circuit City's arbitration agreement to hold it unconscionable, the agreement is suspect for other reasons. It limits or eliminates the ability of an employee to obtain relief against Circuit City by participating in a class action. Such a limitation was condemned by the Supreme Court in Keating v. Superior Court (1982) 31 Cal.3d 584, 183 Cal. Rptr. 360, 645 P.2d 1192 (app. dism. in part and judg. revd. in part on other grounds sub. nom. Southland Corp. v. Keating (1984) 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1.) The court there emphasized the importance of the class action device as a means of vindicating rights asserted by large groups of persons, in that the "class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." (31 Cal.3d at p. 609, 183 Cal.Rptr. 360, 645 P.2d 1192; internal quotation marks omitted.) The court found that the elimination of the device would unduly benefit the wrongdoer and unduly disadvantage the members of the affected class. (Ibid.) It strongly suggested that where an arbitration *921 agreement is part of an adhesion contract, a term precluding settlement of claims by means of a class action should not be enforced. "It is common knowledge that arbitration clauses frequently appear in standardized contracts of adhesion. A primary consideration which has led courts to uphold such clauses, despite the adhesive nature of the contract, is the belief that arbitration is not oppressive and does not defeat the reasonable expectations of the parties. [Citation.] If, however, an arbitration clause may be used to insulate the drafter of an adhesive contract from any form of class proceeding, effectively foreclosing many individual claims, it may well be oppressive and may defeat the expectations of the nondrafting party." (31 Cal.3d at p. 610, 183 Cal.Rptr. 360, 645 P.2d 1192.)
In addition, the arbitration agreement's limitations on punitive damages tends to subvert the accepted purpose of such awards: to punish wrongdoing and to deter future misconduct by either the defendant or other potential wrongdoers. (Stevens v. Owens-Corning Fiberglas Corp. (1996) 49 Cal.App.4th 1645, 1658, 57 Cal. Rptr.2d 525.) It therefore has been suggested that such limitations violate public policy. (Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th at pp. 1539-1540, 60 Cal. Rptr.2d 138.) Similarly, the arbitration agreement tends to discourage the prosecution of employee claims that are encouraged by statute. It thus makes discretionary awards of costs and attorney fees that by statute are mandatory (e.g., Lab.Code, §§ 226, subd. (b), 1194, subd. (a)).[8] It also makes a complaining employee potentially liable for Circuit City's costs and attorney fees, a liability that is not authorized by statute.
In short, and for all of the reasons stated above, we find that Circuit City's arbitration agreement is unconscionable and thus unenforceable.
Circuit City's assertion that its arbitration agreement has withstood judicial scrutiny on numerous occasions is unconvincing for several reasons. None of the cases it cites has precedential value here as none was decided by either the California Supreme Court or by a state appellate court. Indeed, Circuit City primarily relies on unpublished cases out of the Federal District Courts.[9] As to these, the rulings are so limited that we are unable, for the most part, to determine if the arbitration agreements at issue in the cited cases are the same as the arbitration agreement at issue here. We also do not know what specific arguments were made by the parties and accordingly cannot know if the deciding courts fully considered the question of unconscionability. In fact, a number of the cases contain no discussion of unconscionability; hence, it appears that unconscionability was not the subject of any dispute between the parties.
In one case (Shahram Majdi aka Sam Majdi v. Circuit City (C.D.Cal.1998) Case No. CV98-4112AAH(CTx)) the court rejected the contention that Circuit City's arbitration agreement was unconscionable, holding that the plaintiff in that case had a meaningful choice in that he could have chosen to seek work with some other employer instead of signing Circuit City's agreement. As discussed above, we do not consider such a choice to be meaningful. In any event, where, as here, there is a high degree of substantive unconscionability, the requirement of procedural unconscionability is minimal. (Ilkhchooyi v. Best (1995) 37 Cal.App.4th 395, 410, 45 *922 Cal.Rptr.2d 766.) It follows that even if we were to find that the choice to forgo employment with Circuit City rendered the element of procedural unconscionability minimal, Circuit City's arbitration agreement would remain unenforceable because of its substantive unconscionability.
The order denying Circuit City's motion to compel arbitration is affirmed.
STRANKMAN, P.J., and MARCHIANO, J., concur.
NOTES
[1] The order is made appealable by Code of Civil Procedure section 1294, subdivision (a).
[2] We take no position on whether Ramirez might be able to maintain the suit as a class action, noting only that he is attempting to do so.
[3] Title 8, California Code of Regulations section 11070, subdivision 9(B) provides:

"When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."
[4] Title 8, Code of California Regulations section 11070, subdivision 3(A) provides:

"(A) No employee eighteen (18) years of age or over shall be employed more than forty (40) hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over forty (40) hours in the workweek. No overtime pay shall be required for hours of work in excess of any daily number."
[5] Labor Code section 223 provides:

"Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."
[6] The trial court disagreed with Circuit City's interpretation of the rules as barring an employee from seeking relief through the class action device, finding instead that by depriving the arbitrator of jurisdiction to hear class actions, the agreement recognized that Associates were entitled to pursue class actions through the courts. For purposes of appellate argument, but only for those purposes, we accept Circuit City's interpretation of the rules.
[7] There is no evidence, for example, that Ramirez was given the choice to "opt-out" of the arbitration agreement. (Contrast Circuit City Stores, Inc. v. Curry (Tex.App.1997) 946 S.W.2d 486, 490, finding that an employee could not sustain a claim that Circuit City's arbitration was unconscionable when he had been given the opportunity to opt-out of that provision.)
[8] And see. Labor Code section 90.5, subdivision (a): "It is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards."
[9] We take judicial notice of the record and decisions in the cited cases that were not officially reported. (Evid.Code, § 452, subd. (d).)