**In re PALM HARBOR HOMES, INC. and Palm Harbor Homes I, L.P. d/b/a Palm Harbor Village, Relators.**

No. 01–02–00370–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 31, 2003.

Rehearing Overruled March 18, 2004.

Eric L. Lindstrom, Michael J. Craddock, Bush Craddock & Reneker, L.L.P., Dallas, TX, for Appellant.

Douglas Vance Colvin, Law Office of Wes Griggs, West Columbia, TX, for Appellee.

Panel consists of Justices KEYES, HEDGES,[1] and EVANS[2].

## OPINION

FRANK G. EVANS, Justice.

This is an original proceeding for a writ of mandamus. Relators Palm Harbor Homes, Inc. ("Palm Harbor Homes") and Palm Harbor Homes 1, L.P. d/b/a Palm Harbor Village ("Palm Harbor Village"), initiated this original action in April 2002, seeking a writ of mandamus to compel the Hon. J. Ray Gayle, then Judge of the 239th District Court in Brazoria County, to

---

1. The Honorable Adele Hedges, who became Chief Justice of the Fourteenth Court of Appeals on December 8, 2003, continues to participate by assignment for the disposition of this case.

2. Retired Chief Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

rescind an order dated December 4, 2001, denying Relators' Plea in Abatement and Motion to Compel Arbitration, and to compel the Real Parties in Interest Raymond Ripple and wife Crystal Parnell Ripple (the "Ripples") to submit the dispute to binding arbitration before the American Arbitration Association. On February 6, 2003, after the retirement of J. Ray Gayle as Judge of the 239th District Court, this Court abated the proceeding to allow Relators to resubmit their motion to the Hon. Sherry Sebesta, who had succeeded Judge Gayle as Judge of the 239th District Court of Brazoria County. On March 6, 2003, at a hearing before Judge Sebesta, Relators presented their Second Motion to Compel Arbitration, which the court denied by order dated March 29, 2003. On April 1, 2003, Relators filed an amended petition in this Court on April 1, 2003, seeking a writ of mandamus to compel Judge Sebesta to rescind her order of March 28, 2003 and to compel arbitration.

## The Principal Action

In the underlying action, the Ripples seek judgment for monetary damages and other relief, alleging breach of contract, breach of warranty, and statutory violations of the Residential Construction Liability Act in connection with a retail sales transaction in which the Ripples had purchased a mobile home from Palm Harbor Village (the "Retailer"), which had been manufactured by Palm Harbor Homes (the "Manufacturer"). In the course of that sales transaction, the Ripples and the Retailer signed several documents, including a document entitled "Arbitration Provision for Texas" ("hereinafter Palm Harbor No. 1"), which is dated October 1, 1998. Thereafter, the Ripples continued to meet with the Retailer to discuss the progress of the construction work and the purchase of the manufactured home. After the Manufacturer completed construction of the

home in November 1998, the Ripples signed a second arbitration agreement ("Palm Harbor No. 2"), which is dated December 17, 1998. The terms of both documents (together referred to as the "Palm Harbor Agreement") will be outlined below.

In January 1999, the mobile home was constructed on the Ripples' property. After a series of complaints to the Retailer regarding the quality and construction of the home, the Ripples in November 2000 submitted claims to both the Retailer and the Manufacturer based on the provisions of the Residential Construction Liability Act. In May 2001, the Ripples initiated the underlying action, alleging damages for breaches of warranty and contract, including statutory liability under the Residential Construction Liability Act.

## The Parties' Contentions

Relators contend the face of the record demonstrates a clear abuse of discretion by the trial court in denying their motion to compel arbitration. In essence, they argue that the record conclusively establishes the existence of a valid agreement to arbitrate under the Federal Arbitration Act, and that the Ripples did not offer proof in support of their affirmative defenses of lack of consideration and unconscionability.

The Ripples contend that: (1) the Relators failed to meet their threshold burden of establishing the existence of a valid arbitration agreement, and (2) the court did not abuse its discretion, under the circumstances surrounding the transaction, in ruling that the provision in the Palm Harbor Agreement, which purports to give the Manufacturer an absolute and unconditional right to unilaterally "opt-out" of the agreement to arbitrate, renders the entire

agreement unconscionable and unenforceable.

## Standard of Review

 Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or the violation of a legal duty when there is no adequate remedy at law. *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex.1999). In determining whether there has been a clear abuse of discretion justifying mandamus relief, the reviewing court must consider whether the trial court's ruling was one compelled by the facts and circumstances or was arbitrary, unreasonable, or reached without reference to any guiding rules or principles. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

 A trial court's failure to apply the Federal Arbitration Act to the facts of the dispute constitutes an abuse of discretion for which there is no adequate remedy at law. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992). Thus, the erroneous denial of a party's motion to compel arbitration under that Act leaves the movant with no adequate remedy at law, and under such circumstances the movant is entitled to a writ of mandamus. *In re FirstMerit Bank N.A.*, 52 S.W.3d 749, 753 (Tex.2001); *see also Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *In re Conseco Fin. Servicing Corp.*, 19 S.W.3d 562, 568 (Tex.App.-Waco 2000, orig. proceeding); *In re Monsanto Co.*, 998 S.W.2d 917, 921–22 (Tex.App.-Waco 1999, orig. proceeding).

Applying these standards to the record in this case, we must seek to determine whether the trial court's ruling constitutes a clear abuse of discretion, i.e. whether the court could have rendered only one proper decision on the facts and applicable law and failed to reach that decision. *South-*

*west Tex. Pathology Assoc. v. Roosth*, 27 S.W.3d 204, 207 (Tex.App.-San Antonio 2000, no pet.); *Hardin Constr. Group v. Strictly Painting*, 945 S.W.2d 308, 312 (Tex.App.-San Antonio 1997, no writ).

## Relators' Burden of Proof

 A party seeking a writ of mandamus to compel arbitration under the Federal Arbitration Act must first establish the existence of a valid agreement to arbitrate and show that the claims in dispute are within the scope of the agreement. *In re FirstMerit Bank*, 52 S.W.3d at 753. Once the movant proves the existence of a valid agreement to arbitrate, both state and federal policy favors arbitration and any doubts about the scope of the agreement must be resolved in favor of arbitration. *Id.* at 753. However, we may not simply assume the parties agreed to arbitrate; the burden is on the Relators to prove by "clear and unmistakable evidence" the existence of a valid and enforceable contract to arbitrate. *First Options v. Kaplan, Inc.*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

## Policy Considerations

 It is only after the establishment of a valid and enforceable agreement to arbitrate that state and federal policies favor arbitration become applicable. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002); *Fleetwood Enterpr., Inc. v. Gaskamp*, 280 F.3d 1069, 1074 (5th Cir.2002). The purpose of the Federal Arbitration Act is "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *see also Mitsubishi Motors Corp. v. Soler Chrysler Plymouth*, 473 U.S. 614, 625–26, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Waffle House*, 534 U.S. at 294, 122 S.Ct. 754.

■ Accordingly, we must determine, as a matter of contract interpretation, whether the Relators met their burden of proving the existence of a valid and enforceable contract to arbitrate. *Labor Ready Central III v. Gonzalez,* 64 S.W.3d 519, 521–22 (Tex.App.-Corpus Christi 2001, no writ). Because the trial court concluded that Relators did not meet their burden of proof, we must uphold that court's ruling unless the record conclusively requires a contrary result. *See Pepe Int'l Dev. Co. v. Garcia,* 915 S.W.2d 925, 929 (Tex.App.-Houston [1st Dist.] 1996, no writ).

### The Palm Harbor Agreement

The Relators rely upon the provisions of two documents (Palm Harbor No. 1 and No. 2) to support their contention that the Ripples entered into a valid and enforceable agreement to arbitrate. Palm Harbor No. 1 is a one-page printed form dated October 1, 1998. It bears a heading, including address and telephone numbers, entitled "Palm Harbor Village." It is signed by the Ripples, as "Purchaser," and by a representative of Palm Harbor Village, as "Retailer." The document recites that the parties to the "Retail Installment Contract or Cash Sales Contract" agree that:

> any and all controversies and claims arising out of or relating to said contracts or to the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranties (express or implied), repair, or sale/disposition of the "home" which is subject to said contracts, will be settled solely by means of final and binding arbitration before a three-judge panel of the American Arbitration Association.
>
> 1. The arbitration provision will inure to the benefit of the manufacturer of the home as fully as if the manufacturer was a signatory to said contracts;
>
> 2. The arbitration provision also will inure to the benefit of any lender or mortgagee (or assigns) who provide financing for the purchase of the home at the sole discretion of that lender or mortgagee, and
>
> 3. Nothing in this contract requires a lender or mortgagee to invoke this Arbitration Provision, and the lender or mortgagee may do so only if they agree to final and binding determination by the arbitration process.

Palm Harbor No. 2 is also a one-page printed form headed "Palm Harbor Village." It is entitled "ARBITRATION AGREEMENT" and is signed by the Ripples, as "purchaser." Under a signature line designated for the retailer, "Palm Harbor Village," are the initials of some unidentified person. The document recites that it is "executed contemporaneously with and as additional consideration for" an installment or sales contract for the purchase of a manufactured home as described in said contract. It also recites that the agreement is to inure to the benefit of the "manufacturer of the Home and of the lender or mortgagee, if any, which provides the financing for the purchase of the Home, their successors and assigns." The document then sets forth the "opt-out" provision in issue here, which states the following:

> The manufacturer, the lender, or mortgagee may elect not to initiate and be bound by the arbitration by giving the notice; each, in its sole discretion, *may opt out of and elect not to be bound by the arbitration* by giving written notice of the election to all parties within twenty (20) days after receipt of the Notice from another party.

(Emphasis added.)

### Applicable Contract Law

■ In deciding whether a valid agreement to arbitrate exists, under either the

Federal Arbitration Act or the Texas Arbitration Statute, we must apply applicable state contract law. *Labor Ready Central,* 64 S.W.3d 519, 524 n. 2; *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *JM Davidson, Inc. v. Webster,* 49 S.W.3d 507, 512 (Tex.App.-Corpus Christi 2001, pet. filed); *Tenet Healthcare Ltd. v. Cooper,* 960 S.W.2d 386, 387–88 (Tex.App.-Houston [14th Dist.] 1998, pet. dism'd w.o.j.). Thus, we must look to the contract law of the State of Texas to determine that issue in this case.

 Both documents before us involve the same parties and relate to the same transaction; therefore, we will read their provisions together in ascertaining the parties' intent. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex.2000); *The Courage Co., L.L.C. v. The Chemshare Corp.,* 93 S.W.3d 323, 332–33 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Because the second document does not specify whether and to what extent it is intended to operate in discharge or substitution of the first document, we shall interpret the two documents together, and in the event of any inconsistency between the two documents, the provisions of the Palm Harbor Agreement, being the later of the two, will prevail. *Id.* at 333–34.

## Mutuality of Obligations

 Under Texas law, a binding contract must be based on a valuable consideration. The consideration need not always be in the form of identical promises. For example, a contract may be based on one party's agreement to pay a sum of money in return for the other party's promise to perform a certain task. In such a circumstance, the first party's payment constitutes an independent consideration for the second party's promissory obligation. *See Johnson v. Breckenridge–Stephens Title Co.,* 257 S.W. 223, 225 (Tex. 1924) (citing, *inter alia, East Line Ry. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (Tex.1888)).

 However, if the parties have entered into a bilateral contract, where their promises constitute the only consideration for the agreement, the contract is invalid unless their mutual obligations are "mutual and binding." *Labor Ready Central v. Gonzalez,* 64 S.W.3d 519, 522–23 (Tex.App.-Corpus Christi 2001, no pet.); *see also Sterling Computer Sys. of Texas, Inc. v. Texas Pipe Bending Co.,* 507 S.W.2d 282, 282–83 (Tex.App.-Houston [14th Dist] 1974, writ ref'd) (bilateral contract lacking mutuality of obligation is unenforceable). This well-established principle of law is applicable to agreements to arbitrate as well as to other contracts. *See In re Tenet Healthcare, Ltd.,* 84 S.W.3d 760, 766 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (mutual promises waiving right to litigate will constitute valid consideration for agreement to arbitrate, provided neither party can unilaterally rescind); *see also Tenet Healthcare Ltd. v. Cooper,* 960 S.W.2d 386, 388 (Tex. App.-Houston [14th Dist.] 1997, pet. dism'd w.o.j.); *In re Jebbia,* 26 S.W.3d 753, 758 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding); *In re Alamo Lumber Co.,* 23 S.W.3d 577, 579–80 (Tex.App.-San Antonio 2000, orig. proceeding); *but see and compare In re Jobe Concrete Prods., Inc.,* No. 08–02–00175–CV, 2003 WL 21757512.

## The Appellate Record

Applying Texas contract law, we next must determine whether the trial court abused its discretion in ruling that the "opt-out provision" in the Palm Harbor Agreement rendered the agreement to arbitrate unenforceable for want of consideration. In making this determination, we must review the documents in light of the

record before us and seek to determine whether there is any evidence of an independent consideration being received by the Ripples in return for their giving the opt-out right to the Manufacturer. In our review, we will consider only the evidence and inferences therefrom that tend to support the trial court's ruling, and we must disregard all evidence and inferences to the contrary. *Certain Underwriters at Lloyd's of London,* 950 S.W.2d 375, 377 (Tex.App.-Tyler 1996), *writ dism'd w.o.j.,* 988 S.W.2d 731 (Tex.1998).

The documents in the record before us consist of: (1) Relators' verified petition for mandamus, (2) the Ripples' verified response, and (3) authenticated copies of certain pleadings and exhibits attached to the Relators' petition. The trial court's original order denying Relators' motion to compel arbitration recites that the court heard evidence on the motion, but the Relators deny that the court conducted an evidentiary hearing. The Ripples do not specifically contradict the Relators' assertion that no evidence was heard by the court. The Ripples argue, however, that inasmuch as the Relators failed to bring forward a complete record of the proceedings, this Court must presume any omitted evidence supports the trial court's ruling. *See Fort Bend County v. Texas Parks & Wildlife Com'n,* 818 S.W.2d 898, 900 (Tex. App.-Austin 1991, no writ); *Polanco v. Pan American University,* 818 S.W.2d 97, 99 (Tex.App.-Corpus Christi 1991, no writ).

■ We need not decide whether this presumption applies here, because the documents relied upon by Relators do not suggest, much less conclusively prove, that the Ripples received an independent consideration for giving the opt-out right to the Manufacturer. Based on our examination of the record, we conclude that the trial court did not abuse its discretion in ruling Relators failed to meet their burden

of showing the Ripples received an independent consideration for giving the unilateral right to rescind to the Manufacturer. *Compare Emerald Texas, Inc. v. Peel,* 920 S.W.2d 398, 402 (Tex.App.-Houston [1st Dist.] 1996, no writ) (where record affirmatively showed the existence of a valuable consideration moving to the purchaser).

### The "Opt–Out" Provision and Mutuality

■ Under Texas law, an "opt out" provision purporting to give one party the unilateral right to avoid their contractual obligations renders the contract invalid for want of mutuality. *Sterling Computer,* 507 S.W.2d at 282; *In re Tenet Healthcare, Ltd.,* 84 S.W.3d at 766; *Labor Ready Central,* 64 S.W.3d at 519; *compare Lawrence v. Comprehensive Bus. Servs. Co.,* 833 F.2d 1159, 1162, 1164 (5th Cir.1987) (recognizing rule but holding provision did not render contract invalid simply because it gave one party right to seek injunctive relief in certain limited circumstances).

■ In this case, the Palm Harbor opt out provision is absolute and unlimited. It purports to give the Manufacturer, as a third-party beneficiary of the contract, the unconditional right to unilaterally "opt out" of the agreement to arbitrate whenever and for whatever reason (or for no reason) it might decide would be in its best interest. Under Texas law, such an unlimited right to rescind a bilateral contract renders the contract void for want of mutuality. *See Sterling Computer,* 507 S.W.2d at 282. Thus, we hold that the trial court did not abuse its discretion in ruling that the opt-out provision in the Palm Harbor Agreement rendered that agreement invalid and unenforceable.

### Issues Relating to Unconscionability

We next review the record to determine whether the trial court clearly abused its

discretion in deciding that it would be unconscionable, under the circumstances of the case, to compel the Ripples to arbitrate their claims against the Relators. In making this determination, we must bear in mind that it was the Ripples' burden to prove their contention that the Palm Harbor Agreement was unconscionable under the circumstances existing at the time of its execution. 9 U.S.C.A. 2; *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *In re Oakwood Mobile Homes*, 987 S.W.2d 571, 573 (Tex.1999); *Emerald Texas*, 920 S.W.2d at 398.

■■■■ We must also bear in mind that this Court is empowered to review the trial court's rulings on issues of both "procedural" and "substantive" unconscionability. *In re Halliburton Co. and Brown & Root Energy Servs.*, 80 S.W.3d 566, 572 (Tex.2002). Thus, in considering whether the trial court's ruling may be upheld on the basis of *procedural* unconscionability, we must ascertain whether the record reflects such a disparity in the parties' respective bargaining power that the trial court could reasonably have decided that the Ripples, as the weaker party in the transaction, had no reasonable opportunity to negotiate an alternative to the opt-out provision. We must also seek to ascertain whether the trial court's ruling may be sustained on the basis of *substantive* unconscionability, i.e. whether the opt-out provision in the Palm Harbor Agreement makes it so one-sided that it would be unconscionable to enforce the agreement under the circumstances existing at the time of its execution. *In re FirstMerit Bank*, 52 S.W.3d at 757 (citing TEX. BUS. & COM.CODE ANN. § 2.302 cmt. 1).

## The Opt–Out Provision and Unconscionability

We have not found any Texas case involving the issue of unconscionability in which the court considered an opt-out provision containing language as broad and unlimited as that contained in the Palm Harbor Agreement. The Texas Supreme Court did consider a somewhat similar provision in an arbitration agreement that allowed a lending bank the right to seek judicial relief for the limited purpose of protecting its loan and security interest. *In re FirstMerit Bank*, 52 S.W.3d at 754. Because the agreement permitted the lending bank to seek judicial relief only for a limited purpose and obligated the bank to arbitrate all other claims, the Court determined that the agreement to arbitrate was not unconscionable. *Id.* at 757.

■■■ We have found several decisions from courts in other states that have addressed the issue of whether an unlimited opt-out provision, such as that contained in the Palm Harbor Agreement, will render contract unconscionable. *Arnold v. United Co. Lending Corp.*, 204 W.Va. 229, 511 S.E.2d 854, 859 (1998) (arbitration provision in consumer loan transaction waiving consumer's right to judicial redress but preserving the lender's right, held unconscionable, void, and unenforceable as matter of law); *Iwen v. U.S. West Direct*, 293 Mont. 512, 977 P.2d 989, 996 (1999) (advertising contract drawn by telecommunications company, which required advertiser, the weaker bargaining party, to submit all claims to arbitration and gave company the right to seek judicial relief, held unconscionable because it lacked mutuality of remedy and contained terms that were unreasonably favorable to the drafter); *Ramirez v. Circuit City Stores*, 90 Cal. Rptr.2d 916, 920 (2000) (holding employment contract provision requiring the weaker party [the employee] to arbitrate claims, while allowing the stronger party [the employer] to seek redress through the courts, is presumptively unconscionable).

We find the rationale of these decisions to be persuasive in deciding the issue at hand.

In this case, the trial court could reasonably have inferred from all the circumstances reflected in the record that the Ripples were at a commercial disadvantage in their contractual negotiations with the Relators, and that, because of the disparity in their bargaining power, the Ripples were not afforded any meaningful opportunity to negotiate a fair and mutually binding opt-out provision. Thus, we conclude that the trial court acted within its judicial discretion in ruling that it would be unconscionable, under the circumstances existing at the time of the execution of the Palm Harbor Agreement, to compel the Ripples to arbitrate their claims against the Relators.

### Claim of Equitable Estoppel

The Relators further assert that "if it is determined that the manufacturer is somehow not compelled to arbitrate due to the 'opt-out' in the Second Arbitration Agreement, the order compelling arbitration should still include the Manufacturer." In support of this assertion, Relators suggest that the claims asserted by the Ripples against the Manufacturer are "inherently inseparable" from the claims asserted against the Retailer and are based on the "same operative facts." Thus, the Relators argue that even though the Manufacturer is not a signatory to the arbitration agreement, the Ripples are equitably "estopped from seeking to avoid arbitration." In support of this contention, Relators cite *In re Educ. Mgmt. Corp.*, 14 S.W.3d 418, 424–25 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding); *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576 (Tex.App.-Houston [14th Dist] 1999, no pet.); *In re Koch Indus., Inc.*, 49 S.W.3d 439 (Tex.App.-San Antonio 2001, orig. proceeding); *In re Nasr*, 50 S.W.3d 23 (Tex.

App–Beaumont 2001, orig. proceeding); *In re Rangel*, 45 S.W.3d 783 (Tex.App.-Waco 2001, orig. proceeding); *In re MacGregor*, 126 S.W.3d 176, No. 01–02–01246–CV, 2003 WL 21545141 (Tex.App.-Houston [1st Dist.] Jul. 10, 2003, orig. proceeding); *Carlin v. 3V, Inc.*, 928 S.W.2d 291 (Tex.App.-Houston [14th Dist.] 1996, no writ); and *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir.2000).

We do not find any of these cases to be applicable here. In each of those cases there was a valid and enforceable agreement to arbitrate. In the instant case, the trial court determined that the Palm Harbor Agreement is void for want of consideration and unconscionable as to both Relators. As a designated third-party beneficiary of that agreement, the Manufacturer stands in the shoes of the contracting party and is subject to all the provisions of the contract. *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 520 (Tex.App.-Austin 1998, no writ); *Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W.2d 432, 434–35 (Tex.App.-Dallas 1988, no writ). Such rights as the Manufacturer might have, as a third-party beneficiary, to compel arbitration are entirely dependent upon the existence of a valid and enforceable contract. The trial court has ruled that the purported contract is invalid and unenforceable as to both Relators, and it did not abuse its discretion in refusing to compel arbitration on Relator's claim of equitable estoppel.

Relators' Petition for Mandamus is denied.

Justice HEDGES, dissenting.

ADELE HEDGES, Justice, dissenting.

I respectfully dissent. I begin with the premise that, contrary to the majority's position, the Relators should not be treated as a single entity. I then deduce that,

because the right to arbitrate was validly invoked by the Retailer, and the Ripple's claims against the Manufacturer are inseparable from their claims against the Retailer, I would hold that the trial court erred in denying the Relators' motion to arbitrate all claims.

### Validity of Agreements to Arbitrate

Relators argue that the trial court abused its discretion in refusing to order that the parties arbitrate their dispute because the two arbitration agreements were valid and enforceable. The Ripples contend that the agreements are unenforceable because (a) relators failed to show adequate consideration for the opt-out provision favoring the Manufacturer, and (b) the opt-out provision defeats the parties' express agreement to arbitrate. This deficiency, the Ripples contend, renders the entire arbitration agreement invalid and unenforceable.

State and federal policies favoring arbitration do not apply to the determination of whether a valid and enforceable contract exists. *See Fleetwood Enterpr., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.2002). The purpose of the Federal Arbitration Act is "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). *See also Mitsubishi Motors Corp. v. Soler Chrysler Plymouth*, 473 U.S. 614, 625–26, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Accordingly, a court considering a motion to compel arbitration must first determine whether there is a valid and binding contract to arbitrate. This determination is a matter of contract interpretation for the court. *Labor Ready Central III, L.P. v. Gonzalez*, 64 S.W.3d 519, 521–22 (Tex.App.Corpus Christi 2001, no pet.). Under either the Federal Arbitration Act or the Texas Arbitration Act, state contract law must be applied in deciding whether there is a binding arbitration agreement. *Labor Ready Central*, 64 S.W.3d at 522 n. 2. *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *J.M. Davidson, Inc. v. Webster*, 49 S.W.3d 507, 512 (Tex.App.Corpus Christi 2001, pet. granted); *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 387–88 (Tex.App.Houston [14th Dist.] 1998, pet. dism'd w.o.j.).

### Adequacy of Consideration

Under Texas law, when there is no consideration for a contract other than the parties' mutual promises, a bilateral agreement is enforceable only if the parties' obligations are "mutual and binding." *Labor Ready Central*, 64 S.W.3d at 522; *see also Sterling Computer Sys. of Tex., Inc. v. Texas Pipe Bending Co.*, 507 S.W.2d 282, 283 (Tex.App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.) (noting contract must be based on valuable consideration, and if there is no consideration or mutual obligation, contact lacks mutuality and is unenforceable). This principle is applicable to agreements to arbitrate. *See In re Tenet Healthcare, Ltd.*, 84 S.W.3d 760, 766–67 (Tex.App.Houston [1st Dist.] 2002), (orig.proceeding) (parties' mutual promises to give up the right to litigate constituted valid consideration for their agreement to arbitrate because neither party could unilaterally rescind the contract or the obligation to arbitrate). *See also Tenet Healthcare Ltd.*, 960 S.W.2d at 388; *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.San Antonio 1999, pet. denied); *In re Jebbia*, 26 S.W.3d 753, 758 (Tex.App.Houston [14th Dist.] 2000, orig. proceeding); *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579–80 (Tex.App.San Antonio 2000, orig. proceeding). Mutuality of obligation is not necessary if there is an adequate consideration supporting a party's unilateral prom-

ise. *Johnson v. Breckenridge–Stephens Title Co.*, 257 S.W. 223, 225 (Tex. Comm'n App.1924, judgm't adopted) (citing *East Line & Red River R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99 (1888)).

The record before this Court consists only of the relators' verified petition for mandamus, the Ripples' verified response, and authenticated copies of various pleadings and exhibits attached to the relators' petition. In reviewing the trial court's ruling, we may consider only the evidence and inferences therefrom that, when viewed in their most favorable light, tend to support the court's determination, and we must disregard all evidence and inferences to the contrary. *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375, 377 (Tex.App.Tyler 1996, no writ). We must uphold the trial court's ruling if there is sufficient evidence to support it on any legal theory asserted. *Pepe Int'l Dev. Co. v. Garcia*, 915 S.W.2d 925, 929 (Tex.App.Houston [1st Dist.] 1996, no writ).

Reviewing the record before us in this light, I find that the trial court could reasonably have inferred from the documents in evidence that the relators failed to prove that the Ripples received any consideration for giving the opt-out right to the Manufacturer. Indeed, the record is confusing at best about the parties' respective benefits and obligations under the terms of their underlying transaction. *Cf. Emerald Texas, Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex.App.-Houston [1st Dist.] 1996, no writ) (where the party contesting the arbitration was shown to have received, along with ownership of the house, an "entire bundle of rights"). Here, there was no affirmative proof showing that the Ripples acquired any adequate consideration in return for their giving the unilateral opt-out provision. In *Palm Harbor Homes v. McCoy*, 944 S.W.2d 716 (Tex.App.-Fort Worth 1997) (orig.proceeding), the buyers of a mobile home made an argument identical to the one before us, *i.e.*, that the arbitration agreement between the retailer and the buyers failed for want of consideration because only the lender or mortgagee could opt out of arbitration. *Id.* at 724. The court rejected this argument, but only because the buyers did not proffer evidence that the retailer was a lender or mortgagee. *Id.* The clear implication from the court's holding was that, had the retailer been a lender or mortgagee, the arbitration provision would have failed for lack of consideration.

Accordingly, the trial court did not abuse its discretion in ruling that the opt-out provision rendered the agreement to arbitrate invalid as to the Manufacturer. *See Sterling Computer Sys.*, 507 S.W.2d at 283. However, because the Retailer had no opt-out option, the arbitration agreement is valid as between the Retailer and the Ripples.

### Inherently Inseparable Claims

Relators contend that even if the opt-out provision invalidates the agreements as to the Manufacturer, the Manufacturer should still be made a party to the arbitration because the claims against the Manufacturer are "inherently inseparable" from the claims against the Retailer. Moreover, the relators contend, the claims being asserted against both relators are "based on the same operative facts."

In certain circumstances, a defendant can compel arbitration even though it is not a signatory to the arbitration agreement. In *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir.), the Fifth Circuit recognized one of those circumstances as a situation in which a "signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted

misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* at 527; *In re Koch Industries,* 49 S.W.3d 439, 447 (Tex.App.-San Antonio 2001, orig. proceeding). Other courts have embraced the same concept when the claims against both the nonsignatory and the signatory "are based on the same operative facts and are inherently inseparable." *In re Nasr,* 50 S.W.3d 23, 28 (Tex. App.-Beaumont 2001, orig. proceeding); *accord In re Education Management Corp., Inc.,* 14 S.W.3d 418, 424 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding).

The record is clear that the Ripples' claim against both the Retailer and the Manufacturer meet the *Grigson* test and the "same operative facts" and "inseparable" criteria. The Ripples have pleaded a cause of action against the Retailer and the Manufacturer under the Texas Residential Liability Act, TEX. PROP.CODE ANN. section 27.004, for the sale and manufacture of a defective manufactured home.

Both the Retailer and the Manufacturer sought arbitration. Because the right to arbitrate was validly invoked by the Retailer, and the Ripple's claims against the Manufacturer are inseparable from their claims against the Retailer, I would hold that the trial court erred in denying the relators' motion to arbitrate all claims. This holding would promote the interest of judicial economy.

I would reverse the order of the trial court denying the relators' demand to arbitrate and remand this cause to the trial court for further proceedings pursuant to this opinion.