NO. 07-11-0426-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JUNE 7, 2012

_____

CROPMARK DIRECT, LLC,

Appellant

v.

MARK URBANCZYK, MARVIN SPARKS AND AGRARIAN
MANAGEMENT, INC.,

Appellees

_____

FROM THE 100TH DISTRICT COURT OF CARSON COUNTY;

NO. 10713; HONORABLE STUART MESSER, PRESIDING

_____

***Opinion***

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

This appeal involves the denial of a motion to compel arbitration. The request was made per clauses appearing in marketing contracts between CropMark Direct, LLC, and Mark Urbanczyk, Marvin Sparks, and Agrarian Management, Inc. (collectively referred to as Urbanczyk). The trial court denied the motion after determining that the contractual right in question had been waived. We affirm the order.

*Background*

The contracts at issue were executed in 2008 and granted CropMark an option to buy cotton grown by Urbanczyk. In 2010, a dispute arose between the parties when Urbanczyk purportedly decided to sell a portion of his crop to someone other than CropMark. The latter filed suit on January 5, 2011, sought and received temporary injunctive relief, filed two notices to produce documents on January 28, 2011, agreed to Urbanczyk's January 27, 2011 motion to transfer venue of the suit from Lubbock County to Carson County, requested Urbanczyk to submit to arbitration via a telephone call between respective legal counsel on February 1, 2011, was told during the same call that he would most likely not agree to arbitration, and sent a letter dated February 3, 2011, requesting arbitration. Urbanczyk expressly refused that request.

CropMark's motion to compel arbitration was filed on July 7, 2011, and heard on August 2, 2011. The trial court denied it on September 22, 2011, because the movant had "substantially invoked the judicial process to the prejudicial detriment of [Urbanczyk] and . . . waived its right to invoke the arbitration clause." The finding of waiver was based upon CropMark 1) requesting a jury trial though the contract did not permit that, 2) "engag[ing] in discovery not contemplated by the" arbitration rules of the Texas Cotton Association, and 3) failing to initiate arbitration procedures despite its chief operating officer being "presumably familiar with the rules of" the Texas Cotton Association. CropMark appealed the decision.[1]

---

[1]A party may perfect an interlocutory appeal from an order denying arbitration. TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (West 2011).

*Law*

Parties may contract to resolve their differences through arbitration. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.001(a) (West 2011) (stating that a written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy existing at the time of the agreement or arising after the date of the agreement). In fact, arbitration is a creature of contract. *See In re Palm Harbor Homes, Inc.*, 129 S.W.3d 636, 642-43 (Tex. App.–Houston [1st Dist.] 2003, no pet.) (stating that in "deciding whether a valid agreement to arbitrate exists, under either the Federal Arbitration Act or the Texas Arbitration Statute, we must apply applicable state contract law"). So, rules applicable to interpreting and enforcing contracts determine the propriety of arbitration per the terms of the particular contract. *Id.* And, like most every obligation imposed by a contract, that mandating arbitration can be waived. *Perry Homes, Inc. v. Cull*, 258 S.W.3d 580, 593 (Tex. 2008).

Next, waiver has historically been defined as the intentional relinquishment of a known right. *In re Universal Underwriters of Texas Ins. Co.,* 345 S.W.3d 404, 407 (Tex. 2011). And, one may so relinquish a right either expressly or impliedly. *Okorafor v. Uncle Sam & Associates, Inc.,* 295 S.W.3d 27, 39 (Tex. App.–Houston [1st Dist.] 2009, pet. denied). The former occurs when the party or parties expressly agree to forego its benefits, for instance. *Id.* The latter normally arises from conduct revealing the requisite intent to forego the right. *WTG Gas Processing, L.P. v. ConocoPhillips Co.,* 309 S.W.3d 635, 648 (Tex. App.–Houston [14th Dist.] 2010, pet. denied).

Neither party suggests that CropMark expressly waived the contractual right to have the dispute at issue resolved through arbitration. Rather, CropMark purportedly

did so by implication, *i.e.,* its conduct. So, we now focus on whether CropMark engaged in conduct from which one can reasonably deduce waiver and find the recent Texas Supreme Court opinion in *Perry Homes, Inc. v. Cull* particularly informative.

In *Perry Homes*, the court was also faced with the question of arbitration and waiver. And, like the argument here, the purported waiver also arose from one party engaging in litigation before demanding arbitration. Before concluding that Cull had indeed waived arbitration, the court made several observations. First, we were told that there exists a strong presumption against waiver. *Perry Homes, Inc. v. Cull*, 258 S.W.3d at 584. Furthermore, rebutting that presumption is a weighty endeavor for the "hurdle is a high one." *Id.* at 589-90. Third, when waiver is implied, as opposed to express, the conduct purportedly giving rise to it must be unequivocal. *Id.* at 593. The court also acknowledged that "substantially invoking the judicial process to the other party's detriment or prejudice" has been held to result in waiver. *Id.* at 589-90. Next, because there exists no bright-line rule, each dispute must be decided on a case-by-case approach based upon the totality of the circumstances. *Id* at 591-92. Sixth, pertinent circumstances include but are not necessarily limited to such indicia as when the movant knew of the arbitration clause, the amount of discovery undertaken, who initiated the discovery, whether that discovery related to the underlying merits of the dispute, whether the discovery would be useful in arbitration, and whether the movant sought judgment on the merits. *Id.*

Other relevant indicia include whether the party seeking arbitration initiated the lawsuit; the amount of time that lapsed before arbitration was sought; the amount of pretrial activity in general that related to the merits of the underlying claims as opposed

4

to the preparation for arbitration; the amount of time spent and expense incurred while prosecuting or defending the suit; whether the movant sought or opposed arbitration earlier in the case; whether the movant filed affirmative claims or dispositive motions; whether any activity undertaken during the litigation would be duplicated in arbitration; and the date of trial. *Id.* at 591.

Frankly, the list of indicia worthy of assessment can be endless. But, whatever those indicia may be in a particular case, their cumulative impact must evince the requisite intent to waive. And, whether they arise to such a level is a question of law that we address *de novo*, according to *Perry Homes. Id.* at 598.

*Application of Law*

CropMark initiated suit and sought temporary injunctive relief. Statute allows a party to obtain temporary injunctive relief preventing the destruction of all or an essential part of the subject matter to be arbitrated. TEX. CIV. PRAC. & REM. CODE ANN. § 171.086(a)(3)(A) (West 2011). Thus, CropMark's filing of a suit and seeking a temporary restraining order and preliminary injunction barring Urbanczyk from disposing of the cotton bales remaining within his control fell short of being unequivocal conduct indicating a desire to forego arbitration. Yet, it said nothing, in its pleadings, of arbitration or the contractual duty imposed upon it to arbitrate. Instead, it prayed for a judicial declaration of its rights under the contracts, a judgment mandating the specific performance of the contracts and, in the alternative, an award of damages.

Next, the topic of arbitration was broached by CropMark and rejected by Urbanczyk within a month after litigation began. However, about six months passed (from the day of suit) before CropMark moved for an order compelling arbitration.

5

During the aforementioned six months, CropMark engaged in discovery. The latter consisted of noticing third parties to produce documents, obtaining subpoenas to compel the production of those documents, and serving interrogatories and requests for admissions upon one or more of the defendants. While CropMark suggests that the scope of that discovery does not appear of record, its corporate representative testified that the "information we were looking for we would need for arbitration." To that comment, we add the nature of the documents sought via the notices to produce served on the third parties. It encompassed acreage reporting forms, yield reports, production histories and the like pertaining to farms operated by Urbanczyk over the last several years. Gathering such information would no doubt help CropMark to calculate the amount of cotton produced by Urbanczyk, which, in turn, would help CropMark determine the amount of cotton or damages to which it was purportedly entitled. And, when considered together, this evidence permits one to reasonably deduce that that discovery was undertaken not to assist in the determination of whether the claims were subject to arbitration, but rather to assist in the resolution of the dispute itself.[2] *See In re Houston Pipeline Co.*, 311 S.W.3d 449, 451 (Tex. 2009) (noting that the type of discovery that a trial court could order under arbitration provisions of the Texas Civil Practice and Remedies Code before arbitration was discovery relevant to whether the issues were subject to arbitration and not to the merits of those issues).

It further appears that several of the discovery mechanisms utilized were not available through the arbitration process. For instance, arbitrators may "mandate the attendance of witnesses and the production of books, records, documents and other

---

[2]Indeed, no one contends that there existed any dispute as to whether the allegations of misconduct mentioned in CropMark's pleadings were encompassed by the arbitration clause.

evidence" per the Texas Cotton Association's arbitration rules. But, those very same rules say nothing about the use of written interrogatories or requests for admission as a means of gathering evidence. Once suit was filed, those means of discovery became available to CropMark via the Texas Rules of Civil Procedure, and it utilized them.

Next, we observe that CropMark demanded a jury trial. Yet, resolving the dispute between it and Urbanczyk in that manner was expressly waived in the contracts. Moreover, asking that a jury address and dispose of the controversy is rather antithetical to the concept of arbitration and one's alleged desire to invoke that process.

But most problematic, or telling, is the last indicia we consider. As previously mentioned, CropMark waited about six months to ask the trial court to compel arbitration. That alone would not necessarily result in waiver since longer delays have not. *See In re AIU Ins. Co.*, 148 S.W.3d 109, 121 (Tex. 2004). But, there is more here. Again, both CropMark and Urbanczyk agreed to "settle differences solely via binding arbitration provided by the Texas Cotton Association." Arbitration provided by the Association called for the proceeding to be initiated within a certain time period. That is, the arbitration rules implemented by the Association specified a deadline by which arbitration had to be commenced. If the proceeding involved a member and non-member of the Association and was being conducted pursuant to court order, the "complaint" had to "be filed by either or both parties within 30 days of issuance of [the] court order." If the proceeding did not involve a member and non-member, "the original complaint . . . [had to] be filed within 90 days after the expiration date for performance of the contract or contracts involved." The former time period was inapplicable here because neither CropMark nor Urbanczyk were members of the Association; CropMark

7

conceded as much at the hearing upon its motion to compel arbitration. That left the 90-day deadline as the time within which CropMark had to act. And when asked if CropMark complied with the provision, its chief operating officer testified that it had not. So, by its own inaction, CropMark precluded itself from arbitrating as "provided by the Texas Cotton Association."

Admittedly, Urbanczyk rebuffed CropMark's early requests to submit to arbitration. Yet, his stance did not impede CropMark from arbitrating. The rules of the Texas Cotton Association allowed the arbitration committee to proceed "ex parte" or without the objecting party. They also specified that the outcome would be "binding on both parties to the controversy" even though one did not participate. Consequently, CropMark could have begun arbitration within the applicable time limit irrespective of Urbanczyk's refusal to cooperate.

In sum, we have reviewed the totality of circumstances appearing of record, as required by *Perry Homes*. While some of those indicia alone would not necessarily compel a finding of waiver, their collective weight favors a different outcome. This is especially so given CropMark's failure to comply with pertinent arbitration deadlines. Urbanczyk can hardly be told to journey down a road that has been closed by inaction and the passage of time. Consequently, we hold that CropMark waived or relinquished its opportunity to arbitrate and that the trial court did not err in denying the motion to compel same.

The order denying the motion to compel arbitration is affirmed.

Brian Quinn
Chief Justice

8