

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00277-CV

ALLEN DRILLING ACQUISITION COMPANY
AND ADAC II, INC.,

Appellants

v.

CRIMSON EXPLORATION INC. AND
CRIMSON EXPLORATION OPERATING, INC.,

Appellees

From the 278th District Court
Madison County, Texas
Trial Court No. 12-12991-278-06

## OPINION ON REHEARING

We previously issued our Memorandum Opinion on March 7, 2018. Appellants

filed a motion for rehearing on April 23, 2018, and we requested a response. Appellees

filed their response on June 26, 2018, and appellants filed a reply on July 9, 2018. After

reviewing the motion for rehearing and response thereto, we grant the motion for

rehearing, in part, and deny the remainder. We withdraw our Memorandum Opinion and Judgment issued on March 7, 2018 and substitute the following in their place.

This appeal involves the construction of a series of agreements relating to the development of oil and gas interests in Madison and Grimes Counties. Crimson Exploration, Inc. and Crimson Exploration Operating, Inc. (collectively "Crimson") sued Allen Drilling Acquisition Company and ADAC II, Inc. (collectively "ADAC") for breach of contract for not paying its share of the costs of developing the project. ADAC counterclaimed that Crimson had failed to convey all of the leases required under the agreements. The trial court denied ADAC's motions for summary judgment and granted summary judgment in favor of Crimson. To decide whether the trial court properly granted summary judgment, we must determine which agreements are applicable to the parties' dispute, the mineral formations to which they apply, and the remedies to which the parties were entitled under the agreements. Because the trial court erred in construing the agreements, we reverse the trial court's judgment, in part, and remand the case to the trial court.

## I.    FACTUAL BACKGROUND

ADAC and Crimson are engaged in the oil and gas business in Texas and other

locations. Originally, they formed an entity called Elgin Holdings LLC to jointly acquire and develop leases in Madison and Grimes Counties, but soon dissolved Elgin and restructured their relationship through a series of agreements. The principal agreements at issue include:

- The Overall Agreement dated March 2006 (Overall Agreement);

- The Original Joint Operating Agreement dated March 2006 (the Original JOA);

- The Ecco Participation Agreement dated June 2006; and

- The Ecco Joint Operating Agreement dated June 2006 (Ecco JOA).

A.        **The Overall Agreement**

The Overall Agreement restructured the parties' relationship such that Crimson owned 77.5% and ADAC owned 22.5 % of the leases listed in attachment 1 to Exhibit A previously owned by Elgin. Crimson also assigned to ADAC an undivided 22.50% working interest in additional leases within an Area of Mutual Interest identified on a Plat covering a surface area in Madison and Grimes Counties. The Overall Agreement also provided that the parties would enter into a joint operating agreement that is described in detail below.

Important to ADAC's breach-of-contract claim against Crimson are the representations and warranties made in the Overall Agreement and corresponding assignments. Crimson represented and warranted that the leases listed in Attachments 1 and 2 to Exhibit B of the Overall Agreement constitute "all oil and gas leases or other

ownership interests in lands to which Crimson or its Affiliates have any right, title or interest at the time of Closing within the Area of Mutual Interest ("AMI") which is the area denoted on Exhibit 'C' . . . hereto." Exhibit C is the same plat attached to the Original JOA as A-1 that is pictured below. ADAC's counterclaim is based on the breach of this representation and warranty and the failure to convey numerous leases it owned in the AMI area at the time of closing (the "Excluded Leases").

**B.    The Original JOA**

The Original JOA governed the exploration and development in the Contract Area defined as the "Oil and Gas Leases and/or Oil and Gas Interests in the land identified in Exhibit 'A.'"[1] Article II of the Original JOA provides that Exhibit A "shall" include "[r]estrictions, if any, as to depths, formations, or substances" and the "Oil and Gas Leases and/or Oil and Gas Interests subject to this agreement." Exhibit A included an extensive list of leases[2] but only one lease had a depth restriction.

The Overall Agreement and the Original JOA included an Area of Mutual Interest ("AMI") that identified the area within which should either party obtain an

---

[1] The Original JOA was based on the American Association of Petroleum Landmen Model Form Operating Agreement 610-1989.

[2] The leases listed in the attachments to the Original Agreement were reformatted and included as Exhibit A.

interest during the term of the agreement, it must offer the other party a ratable share of the interest. The location of the AMI was identified on a plat attached as Exhibit A-1 to the Original JOA and included land in both Madison and Grimes Counties. The "Madisonville (Rodessa) Project Area" was the targeted location for drilling the initial well under the Original JOA.

## C.      Ecco Participation Agreement

Shortly after Crimson and ADAC entered into the Original Agreement and JOA, they learned Ecco Petroleum, Inc. ("Ecco") owned a small portion of lease acreage near the target area. Crimson negotiated an agreement with Ecco to obtain an interest in the leases held by Ecco necessary for drilling the initial wells. The Participation Agreement established a new proportionate interest in the leases amongst the parties. The surface area of the AMI is smaller than the AMI in the Original JOA and specifically limited to the Rodessa formation. The Ecco Participation Agreement also provided for a new JOA governing the drilling in the Prospect Area.

## D.      Ecco JOA

The parties entered into a JOA that governed the exploration and development of oil and gas interests in the Contract Area described in Exhibit A. The provisions were largely the same as those contained in the Original JOA. The differences between the Original JOA

and the Ecco JOA relate to the depth restriction of the leases contained in Exhibit A and the smaller surface area identified as the AMI in the Plat.

Crimson, the operator, began drilling wells pursuant to the Ecco Participation Agreement and JOA. Three wells were drilled and costs for drilling were allocated to Ecco, ADAC, and Crimson in accordance with their working interest. The cost of the initial wells skyrocketed over the original estimates, and both ADAC and Ecco defaulted. ADAC disputes the billings it received from Crimson. In January 2008, Crimson demanded costs and expenses for drilling in the amount of $436,349 from ADAC. When ADAC failed to pay, Crimson deemed ADAC non-consenting.

## II.  PROCEDURAL BACKGROUND

Crimson originally filed suit against ADAC for its breach of the Original JOA.  The sequence of the claims and counterclaims made are important to the determination of Crimson's argument that ADAC's counterclaims are barred under the statute of limitations.

- March 14, 2012:  Crimson sued ADAC for breach of the Original JOA by failing to pay costs associated with the wells under the Original JOA.

- March 27, 2012: ADAC filed a counterclaim against Crimson for breach of the Original JOA asserting that Crimson failed to offer ADAC the opportunity to acquire a share of the leases Crimson had acquired within the ADAC AMI **during the term** of the Original JOA.

- June 28, 2013: Crimson filed its Third Amended Petition seeking a declaration that the Ecco Participation Agreement and Ecco JOA superseded the Original JOA and that Crimson had no obligation to assign the Excluded Leases to

ADAC. The petition also includes a request for reformation of the Original JOA AMI depicted in the plat attached as Exhibit A-1 because "the parties intended the AMI to encompass the area described in Exhibit A-1 as the 'Madisonville (Rodessa) Project Acreage' and intended the JOA to be depth limited to the Rodessa Formation and below."

- July 22, 2013: ADAC filed its First Amended Answer and Counterclaims asserting that the Excluded Leases should have been assigned under the terms of the Overall Agreement and Assignments.

- February 18, 2014: Crimson files its Fourth Amended Petition and seeks a declaration that the Original JOA AMI was limited to the Rodessa formation and omits its previous request to reform the Original JOA AMI plat.

Procedurally, it is important to note that Crimson's interpretation of the Original JOA AMI and its relationship to the Ecco Participation Agreement and JOA changed over the course of the litigation. This change is reflected in Crimson's pleadings and is crucial to understanding the parties' arguments regarding the statute of limitations. What began originally as Crimson's suit to recover costs under the Original JOA became a suit to have the Original JOA declared superseded by the Ecco Participation Agreement and JOA. Although Crimson initially acknowledged the lack of depth limitation in the Original JOA AMI and sought to reform the AMI's surface location and depth, Crimson ultimately dropped the reformation claim and moved for a declaration that the Original JOA AMI was limited to the Rodessa formation. These changes in position resulted in a number of different summary-judgment motions filed over the course of the litigation.

The parties filed a number of motions for summary judgment, amended motions,

comprehensive motions, and consolidated motions. Pertinent to this appeal, ADAC moved for partial summary judgment claiming that Crimson breached the Overall Agreement by not assigning ADAC an interest in all the leases Crimson owned in the Original JOA AMI area prior to the execution of the Overall Agreement, as well as not assigning those properties acquired in the AMI area during the term of the Original JOA.

Crimson moved for summary judgment on a number of issues including:

- The Original JOA is limited to the Rodessa formation;

- ADAC has no right to participate in the Excluded Leases under the Ecco Participation Agreement and Ecco JOA;

- The Original JOA is superseded by the Ecco Participation Agreement and JOA;

- ADAC is in default in the amount of $816,203.57, and ADAC's rights were properly suspended;

- ADAC's breach of contract claims are barred by limitations; and

- There is no wrongful foreclosure as a matter of law.

The trial court denied ADAC's Consolidated Motions for Partial Summary Judgment and granted Crimson's Comprehensive Motion for Summary Judgment. Thereafter, the court considered summary judgment on the issues of damages, judicial foreclosure, and attorney's fees. The issues were resolved in Crimson's favor, and the trial court entered a final judgment.

### III.  STANDARD OF REVIEW

ADAC is appealing both the trial court's grant of Crimson's motions for summary judgment and the denial of its motion for partial summary judgment.  We review the trial court's decision to grant summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  In our de novo review of the trial court's judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The movant has the burden to establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).

Once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden shifts to the nonmovant to present evidence sufficient to raise a fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the appropriate judgment. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

## IV. CONTRACT CONSTRUCTION

Most of the issues to be resolved involve the construction of the Overall Agreement, the Original JOA, the Ecco Participation Agreement, and the Ecco JOA. In construing the language of these agreements, our primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contracts. *Kelley-Coppedge, Inc. v. Highlands Ins. Co*, 980 S.W.2d 462, 464 (Tex. 1998). Where multiple agreements are at issue, we examine all the agreements in their entirety in an effort to harmonize and give effect to all their provisions so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W. 2d 647, 652 (Tex. 1999). To the extent the agreements conflict, the agreement executed later controls. *In re Palm Harbor Homes, Inc*. 129 S.W.3d 636, 643 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding).

## V. ANALYSIS

### A. Is the Original JOA AMI limited to the Rodessa Formation?

The Original JOA covered the exploration and development of the oil and gas leases and oil and gas interests identified in Exhibit A to the JOA. Exhibit A to the JOA shows the participation interest of the parties and attaches an extensive list of oil and gas leases. Article II of the JOA provides that "Exhibit 'A' shall include" specific information, including "(1) Description of lands subject to this agreement, (2) Restrictions, if any, as to depths, formations or substances . . . ." Only one of the many leases listed under Exhibit A has a

depth restriction.

The JOA has an AMI identified as Exhibit A-1: "The plat attached here as exhibit 'A-1' outlines the Area of Mutual Interest (AMI) covering the prospect area." Article XVI.J provides that should either party acquire a lease within the AMI during the term of the Original JOA, that party is obligated to offer the other party the opportunity to participate in that lease. The surface location of the AMI is outlined on the plat with a black line and includes land in both Madison and Grimes Counties. An arrow labeled "Madisonville Rodessa AMI" points to the outline of the AMI. There is also a reference to a smaller area with a dotted outline labeled "Madisonville (Rodessa) Project" acreage. Additionally, there is a stamp in the corner of the plat stating "Crimson Exploration, Inc. Madisonville Rodessa AMI, Madison County, Texas." The Rodessa formation is a recognized geological formation located at a log depth of 11,640 to 12,280 feet on the Induction-Electrical log of the UMC Petroleum Corporation Ruby Magness #1 Well located in the Amy Boatwright Survey A-7, Madison County, Texas. A copy of Exhibit A- 1 is below.



Exhibit "A-1"

To that certain Joint Operating Agreement

dated March 10, 2006

by and between

Crimson Exploration Inc., as Operator

And

Allen Drilling Acquisistion Company, as Non-Operator

CRIMSON EXPLORATION, INC.

MADISONVILLE

RODESSA AMI

MADISON COUNTY, TEXAS

ADAC asserts that the trial court erred in holding that, under the terms of the Original JOA, the AMI is limited to the Rodessa formation. Crimson asserts that the plat marked as Exhibit A-1 to the Original JOA clearly outlines the area of the AMI and the term Rodessa is referenced in several places on the Plat demonstrating that the parties intended the AMI to

be limited to the Rodessa formation.

There is no language in the body of the Original JOA or in Exhibit A (other than one lease) referencing the Rodessa formation and any depth limitation. The clear and unambiguous language of Exhibit A requires that any depth limitation on the properties subject to the JOA be included on Exhibit A. Crimson asserts that the labels on Exhibit A-1 identifying the AMI as the Madisonville Rodessa AMI limit the depth of the properties subject to the AMI. Notably, the arrows and labels reference Madisonville Rodessa, although, clearly, the AMI includes Madison and Grimes Counties. Moreover, the Original JOA cover page is titled Georgetown/Rodessa Prospect. Under Crimson's theory, the Georgetown formation would also be implicated. It is a basic rule of contract construction that a court may not consider any single provision, taken in isolation, as controlling, but must consider all provisions in the context of the entire instrument. *Knott*, 128 S.W.3d at 216. Although courts may consider the title of a contract provision or section to interpret a contract "'the greater weight must be given to the operative contractual clauses of the agreement.'" *Enter. Leasing of Houston v. Barrios* 156 S.W.3d 547, 549 (Tex. 2004) (quoting *Neece v. A.A.A. Realty Co.*, 159 Tex. 403, 322 S.W.2d 597, 600 (1959)). The Original JOA clearly requires any depth limitation of the properties subject to the JOA to be identified in Exhibit A. There is no such depth limitation (except as to one property). The paragraph describing the AMI does not provide any depth restriction.

The plat references Rodessa but no reference to a depth or to a formation. If the parties desired to impose a depth restriction on the properties acquired under the AMI, they could have used the language ultimately used in the Ecco JOA that specifically limited the JOA and the AMI to the Rodessa formation. We hold the trial court erred in holding the Original JOA AMI is limited to the Rodessa formation. We sustain ADAC's second issue.

**B.      Do the Ecco Participation and JOA agreements supersede the Original JOA?**

Article II of the Ecco Participation Agreement defines the AMI as applying solely to interests in the Rodessa and deeper. The Plat attached to the Participation Agreement shows an AMI area that is identical to the smaller Project Acreage outline in the Original JOA Exhibit A-1 Plat. The Ecco JOA provides that Exhibit A shall include the leases and interests subject to the JOA, as well as any restrictions as to depths, formations, or substances. The leases included in the Ecco JOA Exhibit A are identical to those in the Original JOA Exhibit A but are specifically depth-restricted to the Rodessa Formation. The Original JOA and Overall Agreement are not mentioned in the Ecco Participation Agreement and JOA.

ADAC argues that the Court erred in holding that the Ecco Participation Agreement and Ecco JOA supersede the Original JOA. Crimson relies on the merger clause in the Participation Agreement that bears the title, "Integrated Agreement," as evidencing the parties' intent to supersede the prior agreement. Crimson argues that the

Original JOA and the Ecco Participation Agreement and JOA concern the same subject matter, same leases, and relate to the exact same initial and disposal wells; therefore, the later Ecco Participation Agreement and JOA supersede the Original JOA with respect to the parties' working interests and the definitions of the Madisonville Rodessa AMI. ADAC responds that the Original JOA and the Ecco Participation Agreement cover different geographic boundaries and depths.

We turn to the agreements to determine the true intent of the parties as expressed in the documents. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). There is no express language in the Ecco Participation Agreement or JOA that states the parties' intention to supersede the Original JOA. The Ecco Participation Agreement, however, contains a merger clause that provides:

> This Agreement and the Exhibits attached and incorporated herein, contain the entire agreement of the Parties with respect to the subject matter of this contract. There are no representations, warranties, or promises, oral or written, express or implied between the Parties other than those included in this Agreement and the Exhibits hereto. Each of the Parties acknowledges that the other Party has made no promise, representation, or warranty that is not expressly stated or incorporated in this Agreement or the Exhibits hereto. . . . This Agreement is the entire agreement as to all of the performances to be rendered under it. . . .

Crimson argues that because the "subject matter" of the Ecco Participation Agreement and the Original JOA are the same, the Original JOA is superseded under the terms of the merger clause. We disagree.

A "merger clause" is a contractual provision mandating that the written terms of

the contract may not be varied by prior agreements because all such agreements have been merged into the new document. *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 125 n. 6 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (concluding statements that document "constitutes the entire agreement concerning the subject matter hereof" and "supercedes prior . . . agreements" were merger clauses (citing BLACK'S LAW DICTIONARY 989 (6th ed. 1990))). "A merger occurs when the same parties to an earlier agreement later enter into a written integrated agreement covering the same subject matter." *Superior Laminate & Supply, Inc. v. Formica Corp.*, 93 S.W.3d 445, 448-49 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Fish v. Tandy Corp.,* 948 S.W.2d 886, 898 (Tex. App.—Fort Worth 1997, writ denied)).

The Ecco Participation and JOA do not contain language specifically superseding the Original JOA. The merger clause references the subject matter of "this" contract—the Ecco Participation Agreement. The Ecco Participation Agreement and JOA are expressly limited to oil and/or natural gas produced from depths located at the top of the Rodessa formation and deeper. Likewise, the Ecco JOA AMI is limited to the Rodessa formation and constitutes a much smaller surface area than the Original JOA AMI. The leases subject to the Original JOA were not depth-limited (except as to one lease), and the Original JOA AMI was not limited to the Rodessa formation. The fact that the areas covered by the Original JOA and Ecco JOA overlap in part is not persuasive. Depending on development, there may be areas covered by overlapping JOA's. Lamont C. Larsen,

*Joint Operating Agreements: A Primer on Drafting & Negotiating Considerations*, State Bar of Texas, Oil & Gas Disputes Course (2015), at p. 6.

Our role is to determine the intent of the parties as expressed in the agreements, not rewrite the same. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003). Based on a review of the agreements and the significant differences in the property covered by each, we conclude that the merger clause was not intended to apply to the Original JOA and supersede the same.

We next examine whether certain terms of the Original JOA are inconsistent with terms in the later Ecco Participation Agreement and JOA. Instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times. *Ft. Worth Indep. Sch. Dist. v. City of Ft. Worth*, 22 S.W.3d 831, 840 (Tex. 2000). Only when the terms of one contract are so inconsistent with those of the other that the two cannot subsist together is there a presumption that the second superseded the first. *See Willeke v. Bailey*, 144 Tex. 157, 189 S.W.2d 477, 479 (1945); *IP Petroleum Co., Inc. v. Wevanco Energy, L.L.C,*, 116 S.W.3d 888, 899 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see also In re Palm Harbor Homes, Inc.*, 129 S.W.3d at 643 (concluding that later contract terms supersede earlier contract terms to the extent the contracts involving the same subject matter are inconsistent). Generally, when parties entered into a second contract dealing with same subject matter as a prior contract without stating whether the second contract operates as a discharge of or substitute for

the first, the two contracts must be interpreted together and the later contract prevails to the extent they are inconsistent; provisions not in conflict with the subsequent contract remain enforceable. *The Courage Co., L.L.C. v. The Chemshare Corp.*, 93 S.W.3d 323, 333 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Crimson contends that the Original JOA and the Participation Agreement describe the same AMI; they just define it differently. Because these definitions are inconsistent, the later Participation Agreement definition prevails and supersedes the Original JOA. We have noted above the differences in the Original JOA AMI and the Ecco AMI as to surface area and depth limitation. The Ecco AMI is geographically smaller and limited to the Rodessa formation. The Original JOA AMI extends from Madison to Grimes Counties and is not limited to the Rodessa formation. The agreements reflect two different AMI's.[3] These AMI's can co-exist, in part. The Ecco AMI controls in its surface location and within the Rodessa formation. The Original JOA AMI controls in the larger surface location without a depth restriction. Likewise, the Ecco Participation Agreement and JOA govern the operations within its Contract Area. The Original JOA governs operations within its Contract Area, excluding the Ecco Contract Area. Reviewing the agreements in their entirety, we hold that the trial court erred in determining the later signed Participation Agreement and Ecco JOA supersede the Original JOA. We sustain ADAC's first issue.

---

[3] Two AMI's can coexist and pose an increasingly common issue. A.D. Cummings, *Old Area of Mutual Interest and Dedication Agreements – New Problems*, 52 ROCKY MOUNTAIN MINERAL LAW INST. 27-1 (2006).

**C.      Does ADAC have the right to participate in the excluded leases?**

Crimson represented and warranted in the Overall Agreement that the leases listed in an attachment constituted "all oil and gas leases or other ownership interests in lands in which Crimson or its Affiliates have any right, title or interest at the time of Closing." Crimson sought a declaration that numerous leases it acquired before entering into the Overall Agreement (the Excluded Leases) were not subject to the Overall Agreement. ADAC counterclaimed against Crimson for failing to convey the Excluded Leases under the terms of the Overall Agreement and corresponding assignments.

ADAC filed a motion for partial summary judgment on the breach of contract issue. Crimson filed a summary-judgment motion asserting ADAC's claim was barred by the statute of limitations.[4] ADAC responded, arguing that, under section 16.069 of the Civil Practice and Remedies Code, its counterclaim was timely. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.069 (West 2015). The trial court denied ADAC's motion for summary judgment and granted Crimson's motion for summary judgment.[5]

The following dates are pertinent to the statute of limitations issue:

---

[4] In addition to the Statute-of-Limitations defense, in its summary-judgment motion, Crimson argued that the duty to assign the Excluded leases did not arise under the terms of the Original JOA or the Ecco Participation Agreement and JOA.

[5] In its brief, Crimson argues that ADAC's claim is a breach of warranty claim that cannot support specific performance and assignment of leases. This argument was not raised in Crimson's motion for summary judgment or in its response to ADAC's motion for summary judgment. Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. TEX. R. CIV. P. 166a(c); *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013).

- March 24, 2006: Overall Agreement and corresponding assignments executed.

- March 14, 2012: Crimson sued ADAC for breach of the Original JOA by failing to pay costs associated with the wells under the Original JOA.

- March 27, 2012: ADAC filed a counterclaim against Crimson for breach of the Original JOA asserting that Crimson failed to offer ADAC the opportunity to acquire a share of the leases Crimson had acquired within the ADAC AMI **during the term** of the Original JOA.

- June 28, 2013: Crimson filed its Third Amended Petition seeking a declaration that Crimson had no obligation to assign the Excluded Leases to ADAC.

- July 22, 2013: ADAC filed its First Amended Answer and Counterclaims asserting that the Excluded Leases should have been assigned under the terms of the Overall Agreement and Assignments.

As the movant, Crimson had the burden of proof to conclusively establish the applicability of the statute of limitations. *See Knott*, 128 S.W. 3d at 220. Once a nonmovant "interposes" a statute that tolls or suspends the running of limitations, the limitations defense is not conclusively established until the movant meets his burden of negating the applicability of the statute. *Jennings v. Burgess*, 917 S.W.2d 790, 792-93 (Tex. 1996).

ADAC asserts that Crimson breached its duty to assign the Excluded Leases to ADAC in March 2006 under the terms of the Overall Agreement. ADAC did not assert its claim until 2013 but argued before the trial court that limitations was avoided because of the revival doctrine in section 16.069 of the Civil Practice and Remedies Code, which provides:

(a)  If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of the action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitations on the date the party's answer is required.

(b)  The counterclaim or cross claim must be filed not later than the 30th day after the date on which a party's answer is required.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.069.

Crimson filed its Original Petition on March 14, 2012. In its motion for summary judgment, Crimson asserted that ADAC's answer date was in April 2012, and the deadline to file its breach-of-contract claim under section 16.069 expired thirty days later. ADAC responded that the thirty-day extension period did not begin to run until Crimson sought a declaration regarding the Excluded Leases in its Third Amended Petition filed June 28, 2013, and that ADAC timely filed its breach-of-contract claims within thirty days on July 22, 2013. This was how the issue was initially framed before the trial court. Following the trial court's denial of ADAC's partial motion for summary judgment and granting of Crimson's motion for summary judgment, ADAC filed a motion for reconsideration asserting for the first time that, under section 16.068 of the Civil Practice and Remedies Code, its Excluded-Lease counterclaim filed in 2013 related back to its original counterclaim filed in March 2012 that was timely pursuant to section 16.069. *See id.* § 16.068 (West 2015). The court denied the motion for reconsideration.

First, we shall address ADAC's original argument that its Excluded Lease

counterclaim was timely pursuant to section 16.069. Next, we will examine the consequences of the motion to reconsider and the failure to raise the relation-back doctrine pursuant to section 16.068 in its initial partial motion for summary judgment and in its response to Crimson's motion for summary judgment.

To resolve whether ADAC's Excluded-Lease counterclaim was timely, we must determine whether ADAC's breach-of-contract claim arises out of the same transaction or occurrence that is the basis of Crimson's action. Texas courts have used a "logical relationship" test to determine whether counterclaims arise out of the same transaction or occurrence. *Compass Exploration, Inc. v. B-E Drilling Co.*, 60 S.W.3d 273, 278 (Tex. App.—Waco 2001, no pet.); *Williams v. Nat'l Mortgage Co.*, 903 S.W.2d 398, 404 (Tex. App.—Dallas 1995, writ denied). "When the same facts . . . are significant and logically relevant to the various causes of action, the 'logical relationship' test is satisfied." *Williams*, 903 S.W.2d at 404 (citing *Jack H. Brown & Co. v. Nw. Sign Co.*, 718 S.W.2d 397, 400 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)). The Excluded-Lease counterclaim arises from the parties' development of oil and gas properties in Madison and Grimes Counties and is logically relevant to Crimson's claims arising under the Original JOA. In its briefing before this court, ADAC admits that there is a logical relationship between Crimson's initial claims under the Original JOA and ADAC's Excluded Lease contract claim. Accordingly, ADAC's breach-of-contract claim was untimely, and the trial court did not err in initially granting Crimson summary judgment on the Excluded-Lease counterclaim based on

limitations pursuant to section 16.069. We must next examine the effect of the motion for reconsideration raising section 16.068 for the first time.

ADAC's argument in avoidance of the statute of limitations in its partial motion for summary judgment and in its response to Crimson's motion for summary judgment was entirely based on section 16.609 of the Civil Practice and Remedies Code and is contrary to the argument presented in its briefing before this court. In its "Response To Plaintiffs' Second Amended Motion for Partial Summary Judgment," ADAC specifically took the position that its Excluded-Lease counterclaim did not logically relate to the claims in Crimson's Original Petition but only became relevant after Crimson filed its Third Amended Petition:

> The initial claims alleged by Crimson in this lawsuit did not afford the ADAC Parties the opportunity to file counter-claims involving a different issue (the Excluded Leases) under a separate contract (the Overall Agreement) as required by Section 16.069. Rather, it was only when the Crimson Parties sought affirmative relief on the issue of their obligations with respect to the Excluded Leases in their Third Amended Petition could the ADAC Parties could [sic] take advantage of Section 16.069 and file counter-claims arising out of that same issue.

> Undoubtedly, ADAC's breach of contract action as to the Excluded Leases arose out of the same transaction or occurrence that is the basis of the claims pled in the Crimson Parties' Third-Amended Petition . . . and such claims were filed within 30 days after ADAC's answer to the Crimson Parties Third Amended Petition was due.

ADAC did not raise section 16.068 in its motion; instead, it took the inapposite position that its Excluded-Leases counterclaim was not related to Crimson's Original Claim and

its Original Counterclaim. Under these facts, the burden was on Crimson to establish its limitation defense by establishing as a matter of law that ADAC's counterclaim was untimely pursuant to section 16.069; it was not required to establish section 16.068 did not apply when ADAC never raised the provision and its arguments did not implicate the rule.

In its Motion for Reconsideration, ADAC raised the relation-back doctrine under section 16.068 and argued for the first time that its Excluded-Lease counterclaim indeed related back to its Original Counterclaim, as it was logically related to the transactions and occurrences set out in Crimson's Original petition.[6] However, after granting summary judgment, the trial court generally has no obligation to consider further motions on issues adjudicated by the summary judgment. *Brookshire Katy Drainage Dist. v. Lily Gardens LLC*, 333 S.W.3d 301, 307 n.3 (Tex. App. Houston [1st Dist.] 2011, pet. denied) (op. on reh'g) (citing *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 650-51 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

Crimson had the burden of proof to conclusively establish the applicability of the statute of limitations. *See Knott*, 128 S.W. 3d at 220. ADAC argued that section 16.069 suspended the running of limitations and Crimson conclusively negated the application

---

[6] In addition to its motion for reconsideration, ADAC filed a motion for leave to file the motion for reconsideration but argued that it was unnecessary. The court denied the motion for reconsideration, as well as the motion for leave to file the motion for reconsideration.

of section 16.069 to ADAC's Excluded-Leases counterclaim. Crimson was not required to negate a relation-back argument under section 16.068 that was never raised and was inapplicable based on the arguments advanced by ADAC in its motion. In *Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto and Friend LLP*, Mr. Haase made an incorrect argument to avoid the statute of limitations based on when the claim accrued. 404 S.W.3d 75, 87 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The court held that the arguments were insufficient to raise the *Hughes* tolling rule, applicable to attorney malpractice cases, because Haase did not cite *Hughes* in his response, and he used no language to argue that the statute of limitations should be "tolled." *Id.* We conclude that the trial court did not err in granting Crimson summary judgment and denying ADAC's motion for partial summary judgment on ADAC's Excluded-Leases counterclaims.[7]

## D. Did Crimson breach ADAC's rights under the Original JOA AMI provisions?

In addition to its claims involving the Excluded Leases, ADAC filed a motion for partial summary judgment based on its original counterclaim[8] asserting that Crimson breached the Original JOA by failing to give ADAC an opportunity to obtain an interest in leases Crimson subsequently acquired in the Original JOA AMI. In its Comprehensive Motion for Summary Judgment, Crimson argued that the Original JOA had been

---

[7] Because we hold that ADAC's Excluded Leases Claim is barred by limitations, we do not address the substance of its breach of contract claim.

[8] This claim was asserted as part of ADAC's Original Answer and Counterclaim and is not time-barred.

superseded by the Ecco JOA and sought judgment that ADAC's rights under both the Original JOA and the Ecco JOA had been suspended due to ADAC's default under either the Original or Ecco JOA, depending on which JOA applied. In response, ADAC argued that because Crimson deemed it non-consent, ADAC was not in default and the suspension remedy was unavailable. The trial court entered summary judgment granting Crimson's Comprehensive Motion for Summary Judgment as to the Excluded Leases claims and denied ADAC's breach-of-contract claim concerning the Original JOA AMI and dismissed the claim.

On appeal, ADAC argues that the trial court erred in dismissing its breach of contract counterclaim pertaining to the AMI because Crimson did not move for summary judgment on that claim. As discussed above, the Ecco JOA did not supersede the Original JOA and the Original JOA AMI remains in effect for the area outside the parameters of the Contract Area of the Ecco JOA AMI. *See The Courage Co., L.L.C.*, 93 S.W.3d at 333. The Comprehensive Motion for Summary Judgment contained no other grounds for dismissing ADAC's breach-of-contract claim relating to the AMI, and the trial court erred by dismissing this claim.[9]

We overrule ADAC's third and fourth issues pertaining to the Excluded Leases.

---

[9] We consider all summary-judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal. We also "may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy." *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623,626 (Tex. 1996).

However, we reverse the trial court's judgment dismissing ADAC's breach-of-contract counterclaim that Crimson acquired leases within the Original JOA AMI (excluding the contract area covered by the Ecco AMI) and failed to offer ADAC an opportunity to acquire its interest.

## E.    What is the Effect of Crimson's election to deem ADAC a non-consenting party?

Three wells were drilled under the terms of the Ecco JOA, and ADAC defaulted in the payment of costs associated with the drilling and operations.[10] Crimson elected to deem ADAC a "non-consenting party" as to the three wells under Article XVI.I.3 of the Ecco JOA and suspended ADAC's rights. Ultimately, it sought to foreclose its lien. ADAC claims that when Crimson deemed ADAC non-consent, ADAC was no longer in default under the Ecco Participation Agreement and the Ecco JOA, and Crimson's relief was limited to proceeds from the wells.  Therefore, ADAC argues that the trial court erred in declaring ADAC's rights suspended and granting foreclosure. Crimson argues the Ecco JOA provides a number of non-exclusive remedies, including suspension and foreclosure and the only remedy not available, after deeming ADAC non-consenting, is the ability to sue ADAC directly for expenses. Because ADAC's arguments rely on its interpretation of the non-consent provisions in the Ecco JOA, we must examine the consent provisions, as

---

[10] Two of the wells were obligatory under the Ecco JOA, meaning all parties were obligated to participate in the drilling of these wells and could not elect to not participate.

well as the other remedies available under the Ecco JOA.

Article VII of the Ecco JOA governs the expenditures and liability of the parties. In article VII.B, each party grants a lien upon any interest it owned or acquired in the Contract Area to the other parties to secure performance under the JOA. Article VII.D provides specific remedies in addition to the rights including foreclosure and execution in article VII.B. Significant to this appeal, article VII.D provides: "[E]lection of any one or more of the following remedies shall not preclude the subsequent use of any other remedy specified below or otherwise available to the defaulting party." The Article VII.D specific remedies include:

1. Suspension of Rights;

2. Suit for Damages;

3. Deemed Non-Consent;

4. Advance Payment; and

5. Costs and Attorney's Fees.

Article XVI to the Ecco JOA includes additional provisions relating to the security interests granted by each party. It also includes an identical section to Article VII.D entitled Monetary Defaults and Remedies that is applicable if any party fails to pay its share of costs. It includes the specific remedies mentioned in Article VII.D and the statement that "[E]lection of any one or more of the following remedies shall not preclude the subsequent use of any other remedy specified below or otherwise available to the

defaulting party."

The Deemed Non-Consent remedy that is at issue in this appeal provides:

> Operator . . . may deliver a written Notice of Non-consent Election to the defaulting party at any time after the expiration of the fifteen day cure period following delivery of the Notice of Default, in which event if the billing is for the drilling of a new well or the plugging back, sidetracking, reworking or deepening of a well which is to be or has, been plugged as a dry hole, or for the completion or recompletion of any well, the nonpaying party [ADAC] will be conclusively deemed to have elected not to participate in the operation and to be a Non-Consenting Party with respect thereto under Article VI.B or VI.C. to the extent of the costs unpaid by such party, notwithstanding any election to participate theretofore made. **If election is made to proceed under this provision, then non-defaulting party [Crimson] may not elect to sue for the unpaid amount.**

(Emphasis added).

The oil and gas industry is a risky business with large sums at stake. The working-interest owners that participate in a well are obligated to pay their proportionate share of the costs whether the well is a dry hole or a gusher.[11] As in this case, these costs can be substantial. The Model Form Joint Operating Agreement, upon which the Original and Ecco JOAs are based, provides a means by which development operations can occur without all interest owners participating in the costs and risks associated with the development.[12] Interest owners can "consent" to participate in the project and reap the resulting production in proportion to their respective percentage of ownership. *Dorsett,*

---

[11] *See* Philip B. Berry, *Rights of Non-Operator Under the Joint Operating Agreement*, State Bar of Texas 29th Annual Advanced Oil & Gas & Energy Resources Law Course (2011).

[12] *Id.*

164 S.W.3d at 659. Parties who decline to participate become non-consenting parties and are subject to non-consent penalties that allow the consenting parties to recoup multiples of their costs before the non-consenting party receives its proportionate share of the proceeds. *See XTO Energy Inc. v. Smith Prod., Inc.*, 282 S.W.3d 672, 675 (Tex. App.— Houston [14th Dist.] 2009, pet. dism'd). The Ecco JOA provides that non-consenting parties cannot share in the proceeds of the production until 400% of the costs and expense relating to the development are recouped.

Both parties are in agreement that the deemed non-consent remedy specifically precludes Crimson from suing ADAC for the unpaid amount. The issue is whether the other remedies are applicable in addition to the deemed-consent remedy. ADAC argues that once it was deemed non-consent, it was no longer in default and no longer responsible for paying any costs associated with the development of the three wells; thus, the only recourse available to Crimson was to recoup its 400% penalty before sharing further production with ADAC.[13] ADAC relies on *Dorsett* to support its argument that once it was deemed non-consent, it was no longer in default because, under *Dorsett*, electing to go non-consent is not a breach of the contract. 164 S.W.3d at 662. The crucial distinction here, however, is that ADAC did not elect to go non-consent. In fact, under the terms of the Ecco JOA, at least two of the wells were obligatory and required ADAC's participation. As a defaulting non-consent party, the other remedies mentioned in Article

---

[13] The parties agree Crimson is unable to recover its costs from the wells.

VII.D and XVI were available. The language of the JOA supports this conclusion.

The deemed non-consent remedy excludes only one particular remedy: "**If election is made to proceed under this provision, then non-defaulting party [Crimson] may not elect to sue for the unpaid amount.**" (Emphasis added). It does not specifically exclude any other remedies, nor does it release the debt. It is a covenant not to sue ADAC for the unpaid amount. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 428-29 (Tex. 2015) (noting the difference between a covenant not to sue and a release). Although electing to go non-consent as in *Dorsett* does not constitute a breach of contract, in this case, ADAC did not and could not make that election. Crimson deemed ADAC non-consenting as one of several available remedies. The underlying default continued to exist. This interpretation is supported by the specific language of the JOA that twice notes that the election of one of the remedies shall not preclude the subsequent use of any other remedy specified. The deemed non-consent provision specifically spelled out the other remedy that would not be available as the suit for damages. No other remedy is specifically excluded; therefore, the other remedies continued to be available to Crimson.

1.    **Suspension and Foreclosure Remedies**

Nevertheless, ADAC argues that the trial court erred by: (1) declaring that ADAC's rights were suspended under the Ecco JOA; and (2) foreclosing on Crimson's liens. One of the remedies available to the non-defaulting party under the Ecco JOA is the Suspension of Rights under Article XVI.I that provides in relevant part:

Operator . . . may deliver to the party in default a Notice of Default, which shall specify the default, specify the action to be taken to cure the default, and specify that failure to take such action will result in the exercise of one or more of the remedies provided in this sub-article. If the default is not cured within fifteen days of the delivery of such Notice of Default, Operator may suspend any or all of the rights of the defaulting party granted by this Agreement until the default is cured.

Article VII.B. of the Ecco JOA provides in part that each party grants the other party:

a lien upon any interest it now owns or hereafter acquires in Oil and Gas leases and Oil and Gas Interests in the Contract Area …. To secure performance of all its obligations under this agreement including but not limited to payment of expense, interest and fees . . . .

ADAC argues that because it was deemed non-consent, there was no longer any default; therefore, suspension and foreclosure were not available remedies. We have previously held that the deemed-non-consent remedy is not exclusive of other remedies under the Ecco JOA. Consequently, we hold that the trial court did not err in declaring ADAC's rights suspended under the Ecco JOA (the suspension of rights only pertains to the Ecco JOA and its AMI) and that foreclosure is an available remedy.[14] However, our holding below regarding the amount of damages precludes foreclosure on the amount in the trial court's judgment.

---

[14] Indeed, in addition to creating a security interest in the "personal property and fixtures" used in connection with securing the performance of contractual obligations under the agreements, including the "payment of expense, interest, and fees," Article VIIB provides that "[t]he bringing of suit and the obtaining of judgment by a party for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof." This language appears to contemplate and authorize foreclosure as a remedy to recover the expenses, interest, and fees contractually owed to Crimson.

## 2.    Default Amount

Although Crimson could not sue ADAC directly, it could foreclose its liens based on the outstanding amounts owed by ADAC. Crimson filed a motion for summary judgment to fix the amount of ADAC's default and liability for attorneys' fees. The parties ultimately stipulated to attorney's fees, and the trial court granted summary judgment as to the amount of the default ($816,203.57) and foreclosure. We have already disposed of ADAC's argument that it was not in default due to the deemed-consent provision. We turn to ADAC's complaint that there was a fact issue regarding the amount of the alleged default precluding summary judgment on the amount of the default. In reviewing this issue, we are mindful that we must review the evidence favorable to ADAC as true, and indulge every reasonable inference and resolve all doubts in ADAC's favor. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W. 2d 546, 548-49 (Tex. 1985).

According to ADAC, Crimson relied in part on the expert report of William Waterman, ADAC's expert, to calculate the amount of default. Waterman performed an audit to piece together Crimson's account balances as of June 2013. According to ADAC, this audit was based on incomplete information provided by Crimson that could not be relied upon. Crimson responds that the parties were bound to the procedures under the Council of Petroleum Accountants Societies, Inc. accounting methodology ("COPAS") and that ADAC's complaints regarding billing are barred as untimely.

COPAS section I.3 provides that "Each Non-Operator shall pay its proportion of

all bills within thirty (30) days of receipt." The summary-judgment evidence showed six joint-interest billings going back to 2008 and totaling over $573,000.00 that were not received by ADAC until 2012. Waterman's audit report, dated in 2013, was submitted to Crimson "within the 24 month period in which the six billings were received by ADAC." Under the JOA, ADAC is not obligated to pay an invoice until fifteen days after it is received. Further, the COPAS presumption attaches only upon receipt of the billings by the non-operator. *See, e.g., CabelTel Int'l Corp. v. Chesapeake Exploration, L.L.C.*, N0. 02-11-00224-CV, 2012 Tex. App. LEXIS 5576, at **3-9 (Tex. App.—Fort Worth July 12, 2012, pet. denied) (mem. op.) (reversing, in part, a summary judgment where the operator provided no evidence that joint-interest billings were received by the non-operator).

Based on the summary-judgment evidence, we conclude that Crimson failed to conclusively establish the amount of ADAC's default. Accordingly, we hold that the trial court erred in calculating the damages. We overrule ADAC's fifth issue and sustain, in part, their sixth issue.

## VI. CONCLUSION

The trial court erred in its interpretation of the agreements at issue. The Overall Agreement and Original JOA were not superseded by the Ecco Participation and JOA. Because the leases attached as Exhibit A to the JOA were not depth-limited (except for one lease), the Original AMI was not limited to the Rodessa formation. ADAC's breach-of-contract claim relating to the Excluded leases is barred by the statute of limitations.

However, the trial court erred in dismissing ADAC's breach-of-contract claim relating to participation in subsequent leases under the Original JOA AMI. ADAC is in default under the Ecco JOA, and Crimson is entitled to exercise its remedies of suspension and foreclosure under the Ecco JOA, though there is a fact issue remaining as to the amount of the default. Based on the foregoing, we therefore:

1. Reverse the trial court's judgment that the Original JOA AMI is limited to the Rodessa Formation, and we render judgment that the Original JOA AMI is not limited to the Rodessa Formation (except for one lease);

2. Reverse the trial court's judgment that the Ecco Participation Agreement and the Ecco JOA superseded the Original JOA and render judgment that the Ecco Participation Agreement and Ecco JOA govern operations and participation within their stated Contract Area and AMI and the Original JOA governs operations and participation within its Contract Area and AMI outside the parameters of the Contract Area set forth in the Ecco Participation Agreement and Ecco JOA;

3. Reverse the trial court's judgment dismissing ADAC's breach-of-contract counterclaim that Crimson acquired leases within the Original JOA AMI (excluding the Contract Area covered by the Ecco AMI) and failed to offer ADAC an opportunity to acquire its interest, and we remand this claim to the trial court for further proceedings; and

4. Reverse the trial court's judgment that the amount of ADAC's default is $816,203.51 and remand for new trial on the amount of default.

However, we affirm the following portions of the trial court's judgment:

1. The leases Crimson owned before entering the Original JOA and Ecco JOA that are not listed in Exhibit "A" of the Original or Ecco JOAs that were not assigned to ADAC in connection with them (the "Excluded Leases") are not the subject of the Original JOA, the Ecco JOA, or the Ecco Participation Agreement, and ADAC has no right under the Original JOA or the Ecco Participation and JOA to participate in the Excluded Leases;

2. ADAC is in default under the Ecco Participation Agreement and Ecco JOA and its rights thereunder are suspended under Article VII.D.1 and XVI.I.1 of the Ecco JOA; and

3. Crimson has a lien on ADAC's interests described in Article VII.B of the Ecco JOA and foreclosure of those interests is not precluded by the deemed-consent provision.

REBECCA SIMMONS<br>
Visiting Justice

Before Justice Davis,
        Justice Scoggins, and
        Visiting Justice Simmons[15]
Affirmed, in part, and reversed and remanded, in part
Opinion delivered and filed August 15, 2018
[CV06]



---

[15] The Honorable Rebecca Simmons, former Justice of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 74.003 (West 2013).