**Affirmed and Memorandum Opinion filed October 10, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00635-CV

---

### PREFERRED POOLS OF HOUSTON, INC., Appellant

### V.

### AVANI GOSSAI AND THANI GOSSAI, Appellees

---

**On Appeal from the County Court at Law No. 1**
**Galveston County, Texas**
**Trial Court Cause No. CV-0090604**

---

### MEMORANDUM OPINION

In this interlocutory appeal, appellant Preferred Pools of Houston, Inc. ("Preferred Pools") challenges the trial court's denial of its motion to compel arbitration.[1] In two issues, it contends that it did not waive the right to arbitration and thus the trial court abused its discretion in denying Preferred Pools' motion to

---

[1] Appellate courts may consider appeals from interlocutory orders when a statute explicitly authorizes an appeal. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). Such an appeal may be taken for a denial of a motion to compel an arbitration governed by the Federal Arbitration Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016.

compel mediation. We affirm.

## I.    BACKGROUND

In December 2019, appellees Avani and Thani Gossai ("the Gossais") contracted Preferred Pools to construct an in-ground swimming pool, spa, outdoor kitchen, and outdoor bathroom in the backyard of their home in League City, Texas. The Gossais selected Preferred Pools as a "one-stop shop" for the construction. The contract's terms include, as germane to this appeal, a provision for binding arbitration by the American Arbitration Association.

The Gossais' home abuts a waterway that feeds into Clear Lake, and the property's edge is separated from the water by a bulkhead. Soon after Preferred Pools completed construction in the Gossais' backyard in October 2020, the Gossais noticed settling and a crack in the construction. After multiple problems that Preferred Pools tried to fix, Preferred Pools confirmed in July 2021 that the pool itself was moving, and it tried to remedy this by injecting material under the pool shell to level it. However, the pool continued to move, shifting toward the bulkhead.

By late September 2021, a large gap had developed along the length of the pool, the pool itself was visibly tilted, the outdoor kitchen was tilted, and pavers between the pool and home were caved-in at odd angles. The Gossais' bulkhead bulged outward and was ultimately displaced into the waterway by seven feet. In September 2021, Preferred Pools contacted its insurance carrier, but performed no more repairs while it waited for an insurance representative to inspect the property. In mid-November an insurance representative inspected the property and approved removal of the pool.

After Preferred Pools removed the pool in November 2021, the parties began

to address the bulkhead, which needed to be replaced. This was a $100,000.00 project, and the bulkhead company required a fifty percent down payment to order materials and the remaining fifty percent payment when work commenced. Although Preferred Pools paid the downpayment, by February 2022 it could not or would not pay for the remaining balance. When the bulkhead replacement began in March 2022, the Gossais paid the remaining $49,000.00 out of their savings and their children's college savings accounts.

After the bulkhead replacement, the soil from the Gossais' backyard that had bulged into the waterway needed to be removed from the water and returned to their yard. Because the water-saturated soil remained perched at the edge of the new bulkhead, after removal from the waterway, its weight would void the warranty on the new bulkhead and potentially cause it to collapse. Regrading the soil cost another $50,000.00, again paid by the Gossais. At that point, the Gossais learned from League City that the pool's removal had not been permitted and that a drainage plan should have been submitted with its removal. Moreover, their property originally contained a retention wall, which their expert stated needed to be rebuilt to stabilize the slope of their backyard. With their savings depleted, the Gossais could not pay for a drainage plan, a retention wall, or the soil sampling necessary prior to installation of a retention wall.

The Gossais sent a claim notice letter in March 2022 to Preferred Pools and its subcontractors pursuant to the Residential Construction Liability Act ("RCLA") and the Texas Deceptive Trade Practices Act. They filed suit on September 9, 2022, against Preferred Pools and the engineering firm that Preferred Pools used as a subcontractor on their project. Preferred Pools forwarded the lawsuit to its insurers when it was served. Its answer was due on October 17, 2022, but Preferred Pools did not file an answer. The Gossais sent letters to Preferred Pools and its

insurer on October 19 and 20, 2022, notifying them that the answer was past due. On October 26, 2022, the Gossais filed a motion for partial default judgment as to liability and provided a courtesy copy to Preferred Pools' lawyer. Despite the reminders, Preferred Pools did not file an answer. On October 31, 2022, the trial court granted a partial default judgment against Preferred Pools.

Eighteen days after the trial court entered a partial default judgment, Preferred Pools filed a post-default general denial and request for initial disclosures. It also filed a motion to set aside the default judgment, explaining that two successive insurance adjustors had failed to communicate with it or to retain counsel to file an answer. Preferred Pools' motion did not establish a defense to suit. Moreover, none of its initial pleadings mentioned arbitration.

Preferred Pools set a hearing for December 1, 2022, on its motion to set aside the default judgment. Before the hearing date and before the Gossais responded, the trial court granted Preferred Pools' motion to set aside the default judgment. The Gossais filed a motion to reconsider, which a visiting judge granted in February 2023, reinstating the default judgment and leaving Preferred Pools' motion to set aside for the trial court to determine.

The parties conducted discovery; Preferred Pools filed various pleadings; the parties mediated unsuccessfully; and the parties did not raise the issue of arbitration. On July 20, 2023, the Gossais filed a motion to sever the claims against Preferred Pools and requested a trial setting solely on damages. On the same day, Preferred Pools filed a motion to compel arbitration. In August 2023, a visiting judge signed orders that denied (1) Preferred Pools' motion to compel arbitration, (2) a partial default judgment against Preferred Pools, and (3) the Gossais' motion to sever. Seventeen days later, Preferred Pools filed notice of this interlocutory appeal.

4

## II. STANDARD OF REVIEW

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021); *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to guiding rules or principles. *Taylor Morrison of Tex., Inc. v. Skufca*, 650 S.W.3d 660, 676 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). We defer to the trial court's factual determinations if they are supported by the evidence, but we review the court's legal rulings de novo. *Henry*, 551 S.W.3d at 115. A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Skufca*, 650 S.W.3d at 676. Whether a party has waived its right to arbitrate is a question of law we review de novo. *Henry*, 551 S.W.3d at 115.

## III. APPLICABLE LAW

"A party seeking to compel arbitration has the initial burden to establish the arbitration agreement's existence and show that the claims asserted against it fall within the agreement's scope." *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 171.021(a). "If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement." *Mohamed*, 89 S.W.3d at 835 (citing *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding) (per curiam)).

Waiver is a defense to arbitration, *see Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co.*, 475 S.W.3d 436, 443 (Tex. App.—Houston [14th Dist.] 2015, no pet.), and can occur either expressly or impliedly. *See Perry Homes v. Cull*, 258

5

S.W.3d 580, 590–91, 594 (Tex. 2008). Public policy favors arbitration, and because there is a strong presumption against finding waiver of the right to arbitrate, the burden to prove waiver is heavy. *See In re Bruce Terminix Co.*, 988 S.W.2d 702, 704, 705 (Tex. 1998) (orig. proceeding) (per curiam). Any doubts regarding waiver are resolved in favor of arbitration. *Id*. Waiver will be implied only when (1) the party seeking arbitration has substantially invoked the judicial process and (2) the party opposing arbitration suffers actual prejudice as a result. *See id*. A court looks at the "totality of the circumstances" to determine waiver on a "case-by-case basis." *Perry Homes*, 258 S.W.3d at 591.

Because the trial court did not specify a reason for its denial of the motion to compel arbitration, its order must be upheld if it is proper on any basis considered by the trial court. *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 854 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding).

## A.    SUBSTANTIAL INVOCATION OF THE JUDICIAL PROCESS

For implied waiver, (1) the movant seeking arbitration must have substantially invoked the judicial process and (2) this inconsistent conduct caused detriment or prejudice to the nonmovant. *See G.T. Leach Builders, LLC v. Sapphire V.P.*, 458 S.W.3d 502, 511–12 (Tex. 2015). Substantially invoking the judicial process occurs when the movant seeking arbitration takes specific and deliberate actions that are inconsistent with the right to arbitrate or actively tries but fails to achieve a satisfactory result in litigation before turning to arbitration. *Tuscan Builders, LP v. 1437 SH6 LLC*, 438 S.W.3d 717, 720 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). For a waiver to have occurred, the movant "must, at the very least, [have] engage[d] in some overt act in court that evince[d] a desire to resolve the [same] arbitrable dispute through litigation rather than arbitration." *Haddock v. Quinn*, 287 S.W.3d 158, 177 (Tex. App.—Fort Worth 2009, pet.

6

denied) (internal quotations omitted).

In determining whether a party waived an arbitration clause, the courts have considered, among other factors:

- how long the party moving to compel arbitration waited to do so;

- who initiated the litigation;

- whether the movant sought judgment on the merits;

- the reasons for the movant's delay;

- whether and when the movant knew of the arbitration agreement during the period of delay;

- how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits;

- whether the movant asserted affirmative claims for relief in court;

- the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction);

- the amount of time and expense the parties have committed to the litigation;

- whether the discovery conducted would be unavailable or useful in arbitration; and

- when the case was set for trial.

*G.T. Leach Builders*, 458 S.W.3d at 512. All of these factors are rarely present in a single case. *Perry Homes*, 258 S.W.3d at 591.

**1.      Delay & Knowledge of the Arbitration Agreement**

Here, Preferred Pools waited ten-and-a-half months after the Gossais filed

suit to file its motion to compel arbitration. Courts have found waiver in cases involving similar periods of delay. *See, e.g., Perry Homes*, 258 S.W.3d at 596 (fourteen months); *Menger v. Menger*, No. 01-19-00921-CV, 2021 WL 2654137, at *5 (Tex. App.—Houston [1st Dist.] June 29, 2021, no pet.) (mem. op.) (six months). While such delay, standing alone, does not constitute substantial invocation of the judicial process, *see G.T. Leach Builders*, 458 S.W.3d at 515, the record shows more than mere delay in this case.

Preferred Pools knew about the arbitration agreement from the initiation of suit, if not before, because its written construction agreement contained a non-negotiable paragraph entitled "Binding Arbitration Agreement." The arbitration paragraph included a blank, highlighted in yellow, for the customer to initial. *See Pro. Advantage Software Sols,, Inc. v. W. Gulf Mar. Ass'n Inc*., No. 01-15-01006-CV, 2016 WL 2586690, at * 4 (Tex. App.—Houston [1st Dist.] May 5, 2016, no pet.) (mem. op.) (stating a party is presumed to know the content of an arbitration agreement it drafts and seeks to enforce).

In March 2022, six months before suit, the Gossais also sent notice of their claims to Preferred Pools pursuant to the RCLA. *See* Tex. Prop. Code Ann. § 27.004(a). In response, Preferred Pools did not invoke arbitration or the inspection, repair, and settlement process contemplated in the RCLA. Thus, Preferred Pools had at least six months before suit to review its contract and arbitration agreement with the Gossais. Although Preferred Pools was not required to initiate arbitration before the Gossais filed suit, the trial court stated during the hearing on Preferred Pools' motion to compel arbitration, "It seems like if you had the contract and you get a lawsuit, you immediately file."

Seven-and-a-half months after the lawsuit was filed, Preferred Pools questioned both of the Gossais in their depositions about the arbitration agreement

in the contract. Preferred Pools still did not seek arbitration at that time.

In the hearing on the motion to compel arbitration, the trial court specifically asked Preferred Pools about the reason for its delay in seeking arbitration. Preferred Pools had no specific explanation: "there is no set time for arbitration"; "[t]here may be consideration with the [insurance] carrier"; "investigating the facts of the case"; "assessing what's going on"; and "[y]ou've got to get your feet into the case and this is a case with a lot of claimed damages." Preferred Pools' explanation about "consideration with the carrier" is contradicted by the record, which shows that the insurance carrier opened a claim file in September 2021, a year before the lawsuit. Ten months before suit, Preferred Pools' insurer inspected the Gossais' property and approved removal of the pool. And four months before suit, when Preferred Pools' attorney responded to the Gossais' RCLA notice, he did so on behalf of "my client and my client's insurance carrier." Here, "consideration with the carrier" does not excuse the delay in seeking arbitration after litigation commenced.

Preferred Pools' "investigating the facts of the case" is also an inadequate explanation for its delay. As noted above, Preferred Pools inspected the property with its insurer ten months before the lawsuit began. After Preferred Pools received the Gossais' pre-suit RCLA notice, it had an additional thirty-five days to conduct up to three inspections of the property "to determine the nature and cause of the defect and the nature and extent of repairs necessary to remedy the defect." *See id.* Preferred Pools did not elect to undertake these additional pre-suit inspections.

Further, the American Arbitration Association, named in the parties' contract, reserves discovery for "exceptional cases": "no discovery shall be permitted except as allowed by the arbitrator for good cause shown." Thus, "investigation" during litigation indicates a deliberate act inconsistent with the

right to arbitrate. *See Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 40 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (benefitting from discovery responses despite party's own past due discovery responses, and then seeking arbitration, contravened the intent to arbitrate "and reflected an intent to pursue litigation"). As the trial court responded to Preferred Pools' explanation, "Well, getting your feet into the litigation isn't going to determine whether you requested arbitration or not if arbitration is required by the contract."

We conclude Preferred Pools' delay in moving to compel arbitration supports a finding of waiver.

## 2. Affirmative Relief & Pretrial Matters

As to the extent of its engagement with the litigation's merits, whether it sought judgment, and whether it filed affirmative claims, Preferred Pools argues that "the majority, if not every, action taken by [it] involved having the partial default judgment set aside." In the trial court, however, Preferred Pools explicitly argued the opposite. Eleven months into the litigation, its pleadings stated "there is no default judgment against Preferred Pools" and that it "has been participating in this case towards its resolution . . . ." In an amended answer five months after suit was filed, Preferred Pools filed a jury demand and obtained a written order granting it a jury trial—the only such order for any party in the litigation. *See CropMark Direct, LLC v. Urbanczyk*, 377 S.W.3d 761, 765 (Tex. App.—Amarillo 2012, pet. denied) (concluding movant's jury demand was "antithetical to the concept of arbitration and one's alleged desire to invoke that process").

Preferred Pools also filed a third party petition against its nine subcontractors and a cross-claim against the co-defendant engineering firm, eight months and ten months after suit commenced, for contribution, negligence, breach of express and implied warranties, breach of contract, and attorney's fees. *See*

10

*Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 520 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (concluding party's claims for breach of contract, breach of fiduciary duty and declaratory judgment were claims for affirmative relief); *Okorafor*, 295 S.W.3d at 40 (finding arbitration waived where party's litigation strategy included counterclaims).

The record demonstrates that Preferred Pools sought affirmative relief and participated in pretrial matters, supporting a finding of implied waiver.

## 3.     Discovery

Although Preferred Pools argues that it did not engage in full discovery, it deposed both Gossais; received thousands of pages of documents from them and the co-defendant; reached two Rule 11 agreements about expert designations, reports, and rebuttal expert designations; and propounded discovery to nonparties that address the merits of the Gossais' claims. Preferred Pools continued to serve third-party discovery addressing the merits of the Gossais' claims even after it obtained a stay for this interlocutory appeal. After the litigation commenced, Preferred Pools sought access to the Gossais' property for a visual inspection by its expert, and it later filed a motion to compel soil testing, a procedure it had previously described as "destructive testing." Preferred Pools additionally received the Gossais' and a cross-defendant's expert designations and reports, pursuant to the parties' agreed scheduling order, although it missed its own expert deadlines by forty-seven days. Participation in and initiation of discovery on the merits supports a finding of waiver of arbitration. *See GRGP, Inc. v. Black Forest Holdings, Inc.*, No. 01-23-00314-CV, 2023 WL 8459522, at * 5 (Tex. App.—Houston [1st Dist.] Dec. 7, 2023, no pet.) (mem. op.).

Just two days before it sought arbitration, Preferred Pools scheduled the depositions of its own representatives, though it later unilaterally canceled them

after the hearing on its motion to compel arbitration. At the hearing, the trial court asked Preferred Pools: "You don't see [deposing the Gossais but avoiding your own depositions by seeking arbitration] as being very lopsided one way?" Preferred Pools justified deposing the Gossais before seeking arbitration by arguing that it was necessary to distinguish the claims against Preferred Pools from those against a co-defendant. "[A] party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party." *Perry Homes*, 258 S.W.3d at 597. Notably, none of this discovery would have been allowed under the American Arbitration Association's rules unless the case was considered "exceptional" and good cause was shown. "Prejudice may result when a party seeking arbitration first sought to use the judicial process to gain access to information that would not have been available in arbitration." *G.T. Leach Builders*, 458 S.W.3d at 515.

Preferred Pool's discovery and discovery motions also support a finding of waiver.

### 4.    Trial Date

As to the trial date, when Preferred Pools filed its motion to compel arbitration, the parties' agreed trial date in March 2024 was still seven months away. Preferred Pools thus argued it had not waited until the eve of trial to seek arbitration. The Gossais attorney explained that he had selected March 2024 "to make sure we could do this on the first run" given the reputation of Galveston courts to "move rather quickly." To prepare for this trial date, the Gossais had incurred substantial expert fees and participated in extensive discovery. In reviewing this factor, we have found no authority concluding that seven months remaining before trial favors or disfavors waiver of arbitration. We thus conclude that this factor is neutral.

12

**5.      Time & Money Spent in Litigation**

The Gossais spent $18,028.40 on experts' fees during the litigation. They also incurred undisclosed costs for their attorney's fees and the costs of a court-ordered mediation.[2] These costs undermined one of the prime benefits of arbitration: an expedient and cost-effective dispute resolution process. *Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014) (per curiam).

**6.      Avoidance of Adverse Rulings**

The Gossais argue that Preferred Pools delayed seeking arbitration to avoid adverse rulings and to obtain an advantage. As to avoidance of adverse rulings, Preferred Pools did not file a motion to compel arbitration until the day the Gossais moved to sever Preferred Pools into a separate trial on damages.[3] Tellingly, two days immediately preceding the Gossais' motion to sever, Preferred Pools confirmed deposition dates for its representatives, filed its cross-claims, and gave no indication that it would be seeking arbitration. Still pending was Preferred Pools' motion to set aside the  default judgment, but the Gossais' responsive briefing had raised deficiencies about Preferred Pools' motion.[4] As the Gossais

---

[2] There is evidence that the Gossais incurred "hundreds of thousands of dollars" out of pocket because "their backyard began sliding into the lagoon in League City," and that this amount was onerous and caused considerable stress and grief. However, this evidence is not specific to money they spent in litigation.

[3] The trial court had ruled in a prior hearing that it was reinstating the default judgment against Preferred Pools on liability, subject to Preferred Pools' pending motion to set aside. Multiple times in the litigation, Preferred Pools' counsel misstated this ruling during argument and in additional pleadings.

[4] To set aside a post-answer default judgment, a party must prove that (1) its failure to appear was not intentional or the result of conscious indifference, but was the result of accident or mistake; (2) the party's motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009) (per curiam) (citing *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (1939)). A party cannot be relieved from a default judgment on the ground that it turned the petition over to its insurer and relied upon the insurer to file an answer.

13

correctly reasoned, "[i]f this case goes to arbitration, the real second bite at the apple is going to be Preferred Pools' ability not to worry about a default judgment."

In additional avoidance of possible adverse rulings, Preferred Pools had missed by forty-seven days its deadline to designate experts and file reports. It nonetheless waited to file an "Emergency Motion for Extension" the same week as its motion to compel arbitration. *See BBX Operating, LLC v. Am. Fluorite, Inc.*, No. 09-17-00245-CV, 2018 WL 651276, at *6 (Tex. App.—Beaumont Nov. 16, 2017, no pet.) (mem. op.) ("[A] party who is aware of an arbitration clause, yet only files a motion to compel arbitration after having engaged in discovery and filed pleadings with the trial court, and after having received an adverse ruling from a trial court, has substantially invoked the litigation process and thereby waived its right to arbitrate."); *Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 789 (Tex. App.—El Paso 2015, no pet.) (party sought arbitration after adverse ruling in discovery dispute and prospective adverse ruling on sanctions); *Okorafor*, 295 S.W.3d at 40 (concluding defendant substantially invoked judicial process because she pursued aggressive litigation strategy through amended pleadings that sought affirmative relief and abruptly switched to arbitration strategy when facing looming deadline to respond to discovery requests).

As to gaining advantage, Preferred Pools obtained expert discovery from the Gossais and the cross-defendant, but then sought a forum where it could avoid providing its discovery that others had already provided. Preferred Pools had

---

*Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 652 (Tex. App.—Houston [14th Dist.] 1992, no writ), *disapproved on other grounds by Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005). The motion also cannot be granted if it merely alleges that the defendant has a meritorious defense. Rather, it must be supported by affidavits or other evidence proving prima facie that the defendant has such meritorious defense. *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966).

already deposed the Gossais. And although it assured the Gossais that it would "present our client for deposition, as agreed," Preferred Pools canceled the depositions just two business days before the first deposition was to commence. *See Perry Homes*, 258 S.W.3d at 596 ("[T]he record is nevertheless clear that most of the discovery in the case had already been completed before the Culls requested arbitration. The rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before trial; it is a rule of proportion that is implicated here.").

After considering the totality of the circumstances, we conclude that Preferred Pools substantially invoked the judicial process in a manner inconsistent with the right to arbitrate.

## B.    PREJUDICE

Having determined that Preferred Pools substantially invoked the judicial process, we next consider whether the Gossais established that they were unfairly prejudiced as a result. *See G.T. Leach Builders*, 458 S.W.3d at 515; *Perry Homes*, 258 S.W.3d at 595. "Detriment or prejudice, in this context, refers to an 'inherent unfairness caused by a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *G.T. Leach Builders*, 458 S.W.3d at 515 (quoting *In re Citigroup Global Mkts.*, 258 S.W.3d 623, 625 (Tex. 2008) (orig. proceeding) (per curiam)); *Kennedy Hodges*, 433 S.W.3d at 545. Such inherent unfairness may be manifested "in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Perry Homes*, 258 S.W.3d at 597.

The Gossais first argue that prejudice is no longer a requirement for showing that Preferred Pools waived its right to arbitration, citing *Morgan v. Sundance,*

*Inc.*, 596 U.S. 411, 419 (2022). In *Morgan*, the Supreme Court held that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Id*. Whether that ruling would govern in state court as a matter of procedure is unsettled and a matter for the Texas Supreme Court to determine. *See Momentum Project Controls, LLC v. Booflies to Beefras LLC*, No. 14-22-00712-CV, 2023 WL 4196584, at *5 n.5 (Tex. App.—Houston [14th Dist.] June 27, 2023, pet. denied) (mem. op.).

Regardless, we nevertheless determine that the Gossais suffered prejudice as a result of Preferred Pools' conduct. As discussed above, the Gossais presented evidence that they had incurred $18,028.40 in expert fees during the litigation. They also incurred attorney's fees and mediation costs. The record also shows that they would be required to pay at least $16,175.00 in arbitration fees, plus additional monies to compensate the arbitrator.

Further, the Gossais contended that Preferred Pools "delayed this litigation repeatedly" and "seeks to compel arbitration to avoid the consequences of its delay and asks this Court to allow it to delay further by compelling arbitration." The trial court may have determined that inherent unfairness to the Gossais was manifested through a pattern of delay or untimeliness by Preferred Pools and its insurers, specifically: (1) the sixty-day delay in inspecting the Gossais' failing pool and bulkhead after an insurance claim file was opened; (2) the untimely response to the Gossais' notice letter;[5] (3) no inspection of the property as contemplated by the RCLA in the thirty-five days after the Gossais' notice letter; (4) followed by a motion to compel destructive soil testing and emergency motion to extend its expert deadlines, filed forty-seven days after its missed expert deadlines; (5) late

_____

[5] *See* Tex. Prop. Code Ann. § 27.004(b) (contemplating a response within sixty days).

16

assignment of trial counsel for Preferred Pools after suit was filed; (6) failure to file an answer before default judgment despite multiple reminders from the Gossais; (7) filing a post-default answer thirty-two days after it was due and fifty-three days after service of citation; and (8) attendance at court-ordered mediation without settlement authority, resulting in the Gossais needlessly incurring costs for the mediator and their attorney.[6] Further, because the trial court was simultaneously considering whether to compel arbitration and whether the partial default judgment against Preferred Pools "stayed in place," it was considering Preferred Pools' explanation that the reason for the defaulted judgment was due to its insurers' resisting coverage or providing a defense. The trial court may have concluded that Preferred Pools or its insurers had used delay as a legal strategy until they could delay no longer, then attempted to "have it both ways by switching between litigation and arbitration to its own advantage." *G.T. Leach Builders*, 458 S.W.3d at 515; *see Perry Homes*, 258 S.W.3d at 597 (inherent unfairness can be manifested through damage to a party's legal position).

We conclude on the record before us that Preferred Pools' conduct resulted in prejudice to the Gossais. *See GRGP, Inc.*, 2023 WL 8459522, at *7 (noting inherent unfairness in terms of delay, expense, or damage to a party's legal position).

## IV. Conclusion

Because we have determined that Preferred Pools substantially invoked the judicial process, causing detriment or prejudice to the Gossais, we conclude that Preferred Pools impliedly waived arbitration. The trial court did not abuse its discretion in denying Preferred Pools' motion to compel arbitration. We overrule

---

[6] Except as agreed by the parties, a court may not order mediation in an action that is subject to the Federal Arbitration Act. Tex. Civ. Prac. & Rem. Code Ann. § 154.021(c).

Preferred Pools' two issues and affirm the trial court's order denying Preferred Pools' motion to compel arbitration.

/s/    Margaret "Meg" Poissant
Justice

Panel consists of Justices Jewell, Bourliot, and Poissant.